SILBERSTEIN *v.* HOUSTON, W. ST. & P. F. R. CO.

*(Supreme Court, General Term, First Department.   March 29, 1889.)*

1. HORSE AND STREET RAILROADS—NEGLIGENCE OF DRIVER.
   In an action for injuries received by being run over by a horse-car, there was evidence that the car was being propelled at a high rate of speed, one witness testifying that the horses were galloping. The driver was blind in one eye, one of the brakes was not in good order, and there was evidence that the driver had his head turned towards the car, away from the direction it was moving, and that there was nothing requiring his attention about the car. There was also evidence that after plaintiff fell on the track in front of the car, an outcry was made to stop the car, but that the driver failed to heed the cry, or try to stop the car. *Held*, that the jury were warranted in finding the driver negligent, so as to render his employers liable.

**2. SAME—CONTRIBUTORY NEGLIGENCE.**
It appeared that plaintiff, a bright boy about eight years of age, fell while crossing the track in front of and looking towards the car. The exact intervening distance between him and the car when he fell was not shown, but all the witnesses agreed that if he had not fallen, he could have crossed safely. *Held*, that the question of his contributory negligence was properly submitted to the jury.

**3. SAME—EVIDENCE.**
Evidence for plaintiff that it rained two days before the accident, and that the temperature had been below the freezing point during those two days, is admissible to show the condition of the track, and the reason for plaintiff's fall, and it is immaterial that plaintiff's counsel stated, before the evidence was admitted, that he desired to impute negligence to defendant thereby, where it does not appear to have been used or received in support of such theory. VAN BRUNT, P. J., dissenting.

**4. SAME—DRIVER'S DUTIES.**
Testimony by the driver on his cross-examination by plaintiff that it was his duty to see that fares were paid, make change, and keep boys off the rear of the car, is competent, and not prejudicial to defendant, where it appears that nothing of the kind required his attention at the time of the accident.

**5. EVIDENCE—EXPERT—PROBABLE RESULT OF INJURY.**
Testimony by plaintiff's physicians as to the reasonably probable result of his injuries, based on the facts likely to arise in the case, is admissible.[1]

**6. DAMAGES—EXCESSIVE—REMITTITUR.**
The injury to plaintiff consisted in the loss of his right arm near the shoulder. The jury returned a verdict for him for $15,000, and it appeared probable that they were influenced and exasperated by the driver's unfeeling statements on his examination. *Held*, that the judgment should be reversed, unless plaintiff would stipulate to reduce the amount to $10,000.

**7. APPEAL—REVIEW.**
Defendant cannot assign as error the admission of evidence obtained on its re-examination of its own witness.

Appeal from circuit court, New York county.

Action by Emanuel Silberstein, by David Silberstein, his guardian *ad litem*, against the Houston, West Street & Pavonia Ferry Railroad Company. Judgment on a verdict for plaintiff, defendant's motion for new trial denied, and defendant appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Miller & Wells*, (*Charles E. Miller*, of counsel,) for appellant. *Maurice Untermeyer*, (*Samuel Untermeyer*, of counsel,) for respondent.

DANIELS, J. The plaintiff was run over while crossing Stanton street, by one of the defendant's cars, on the afternoon of Sunday, the 13th of February, 1887. He was described by the evidence as an intelligent, well-behaved boy, who had been attending the school of one of the witnesses for four and a half months. His age was stated in answer to an inquiry made by one of the physicians, who was a witness upon the trial, to have been between eight and nine years at the time of the trial, which took place in March, 1888; and that this statement was accepted as correct appears from what was said by the counsel for the defendant in his motion for the dismissal of the complaint at the close of the plaintiff's evidence, for he was then stated by the counsel to have been a boy of about eight years of age. His age and intelligence were such as to permit him to pass over the street without the imputation of negligence or carelessness on the part of his parents because of the omission to provide him with an attendant. To prove the carelessness of the driver, who was alone in charge of the car, without any conductor, evidence was elicited from witnesses sworn on the part of the plaintiff, that as the car was passing down the street towards the East river, it was propelled at a very high rate

---

[1] Concerning the admissibility of expert testimony as to the probable result of personal injuries, see Campbell v. Railroad Co., 3 N. Y. Supp. 694, and note; Bailey v. Westcott, ante, 482, and note.

of speed, reaching, according to the judgment of at least one of the witnesses, the speed of about 12 miles an hour, and according to another, who testified that the horses were galloping, and going as he judged at the rate of from 10 to 12 miles an hour.   Another witness described the movement to have been upon a gallop, going as fast as the horses could come.   This rate of speed and movement of the horses was denied by the driver and a person who was riding at the time in the car as its only passenger, and other witnesses sworn on behalf of the defendant.   But the evidence in this manner given was not such as to exclude the jury from the right to determine the rate of speed at which the car was being propelled, and adopting as measurably truthful the state- ments of the witnesses sworn on behalf of the plaintiff.   And the fact which the jury was in this manner at liberty to find in favor of the plaintiff, and which they finally did find, for they could not well have rendered the verdict which they did without it, was a circumstance indicating negligent or care- less management on the part of the driver; for it was his duty to so far re- strain the speed of the horses as to be able to control them in such a manner as to avoid the needless occurrence of collisions with persons having as much right as himself to the use of the street, in attempting to pass over it.   This duty was enhanced by the circumstance that the driver was blind in one eye, and one of the brakes was not in good working order, leaving the car, in some degree at least, not entirely subject to his control.   As the car was pass- ing along the street in the manner described by the witnesses, the plaintiff undertook to make the crossing.   He was not, however, observed by all the witnesses sworn in his behalf until he had fallen on the track, and the horses were about to pass over him.   That he did fall upon the track while he was endeavoring to cross it, is supported by all the evidence.   Witnesses exam- ined on his behalf testified that as he was endeavoring to rise after his fall, he was knocked down by the horses, and the car passed over him.

Other testimony was given tending to prove the fact to be that the driver was not looking down the street, but had his head turned towards the car, or away from the direction in which it was moving.   This was a further and additional circumstance indicating inattention and careless management on his part.   There was but one passenger in the car, and no person following or about it requiring attention from the driver, as the individual having sole charge of it.   And if he was passing down the street at the rate of speed de- scribed by the witnesses who were sworn on behalf of the plaintiff, and which the jury were at liberty to believe from the evidence, there was such careless- ness on his part as could legally be imputed to the defendant as a ground for maintaining the plaintiff's action for the recovery of compensation for the in- jury he had received.   Further evidence of his mismanagement and miscon- duct was given by witnesses stating that an outcry was made to the driver to stop the car after the boy fell upon the track, but that he failed to heed this warning, or to exert himself to stop the car, on account of the fact that his attention was directed away from the boy.   And that there was cause for ex- ertion on the part of the driver was conceded by himself as a witness for the defendant, for he himself testified that he saw the boy as soon as he started off the sidewalk, and that he started to run; and the further statement was made by him: "When I saw the boy step off the sidewalk I thought there was going to be an accident right away.   I should certainly think I did." Two witnesses testified that they observed the boy as he approached and un- dertook to cross the track.   From their evidence it appeared that he was walk- ing and looking west on Stanton street, towards the Bowery, which was the direction from which the car was approaching.   Evidence was further given tending to prove the fact to be that the car was about two houses away when the boy fell upon the track.   What this precise intervening distance would be, was not proved upon the trial; but the witnesses agreed in the statement that if the boy had not fallen upon the track, he would have crossed it in safety.

Both the driver and the witness Stack, who described the boy as running across the street, also agreed that he would have crossed in safety if he had not fallen as he did.

As the evidence was presented the jury could very well find from it that the boy directed his attention to the car as it was approaching, and was so far distant from it as to be able to walk across the track, if he had not slipped and fallen before it reached him, and whether he was negligent in attempting to cross as he did, was accordingly a question to be submitted to and decided by the jury. The same degree of care could not be exacted from him as might very well be required from an older person, but what he was required to observe was reasonable care apportioned to his age, before he commenced crossing the track; and whether he exercised that was a question under the circumstances which the jury were at liberty to decide in his favor. The case in this respect widely differs from that of *Wendell* v. *Railroad Co.*, 91 N. Y. 420, where the boy attempted to cross the track in front of an approaching engine against the remonstrance and resistance of a flagman stationed at the crossing. The danger in that case was more immediate and imminent than it was in the present case. And no principle was either there held or referred to, or in the case of *Stone* v. *Railroad Co.*, 46 Hun, 184, where the person wholly failed to look, which would justly exclude this case from the consideration and decision of the jury. Upon both the essential inquiries on which the action depended a sharp conflict arose between the witnesses, and that conflict it was the appropriate province of the jury to consider and decide. There was accordingly no phase of the case, either at the close of the plaintiff's evidence or at the close of all the evidence given upon the trial, which would have justified the court in withholding it from the jury.

A witness was produced upon the trial to prove the condition of the weather prior to the occurrence of the accident, and he was asked for the time preceding the 13th of February of the last fall of rain or snow in the city. This was objected to on the part of the defense, and the plaintiff's counsel stated that the offer was made to show that it had not rained or snowed within two days at least of the time of the accident, and that there was ice upon the stones between the rails of the defendant's track at the place where the boy slipped, from which they desired to attribute negligence to the defendant by reason of that condition of the track. The objection was thereupon overruled, and the defendant excepted; and the witness stated that it rained in the afternoon of the 11th of February, and on the 12th and 13th of the month the temperature was below the freezing point. This evidence, though of little consequence in the case, was not erroneously received. It was competent for the plaintiff to prove the condition of the street between the rails at the time the boy fell upon the track. The fact had a tendency to explain the cause or reason of his fall, and, as the evidence was pertinent for this object, the statement that the plaintiff's counsel desired to impute negligence to the defendant on account of the condition of the track formed no cause for its exclusion; for the evidence does not appear to have been received by the court for that object, or to have been used during the trial in support of such a theory. The charge has not been included in the printed case, and it is to be assumed, therefore, that the case was correctly submitted to the jury, and that would exclude this proposed use of this evidence.

The answers permitted to be taken from the driver himself in the course of his cross-examination, that the duty devolved upon him of seeing that the passengers paid their fare, and of making change, and of keeping boys off the rear of the car, in no manner prejudiced the defense of the defendant; for it appeared by the evidence of the driver that no passenger in the car at the time required his attention, and that there were no boys about the rear of the car requiring their correction, or exertion on his part. The evidence might well have been omitted, but, as it had no bearing on any controverted fact in

the case, it was not error for the court to permit it to be taken as a part of the cross-examination of the witness. The answer which the witness Stack was allowed to give to the question, "What he expected would be the result when he saw the boy moving across towards the horses," was obtained on the defendant's own re-examination of the witness, and whether it was right to receive it or not for this reason cannot be assigned as error. Evidence was given under the defendant's exception by the physician sworn on behalf of the plaintiff that it would be probable that a second amputation would become necessary of the bone of the piece of the arm, by reason of its liability to grow more rapidly than the muscle. But the physicians testified—in which respect they differ from those on behalf of the defendant—that there was a reasonable probability that the second amputation would be required to be performed on account of the natural tendency of the bone to grow and protrude beyond the muscles of the arm. This evidence was entirely competent, as long as the conclusion depended upon no conjecture, but upon the state of facts which it was reasonable to be expected would arise in the case. The contradiction of the evidence in one respect of the defendant's witness Stimpson by a reference to a statement contained in a book, was within the province of the cross-examination, and the exception to the decision receiving the answer has no legal foundation.

In fact, the case appears to have been tried with a just regard to the rights and obligations of each of the parties, and, as the charge has been wholly omitted, it is to be assumed that it was not only correctly, but carefully, presented to the jury. They have rendered a verdict in favor of the plaintiff for the sum of $15,000. The substantial and permanent injury sustained by him was the loss of his right arm, which was taken off by amputation after the accident, near the shoulder. This verdict seems to have been excessive for the injury actually received, and probably arose out of the indignation of the jury, because of contradictory and unfeeling statements of the driver himself in the course of his examination, and the indifference with which he referred to the accident. His testimony on this subject was that he had not bothered his head about the thing since the accident had happened. This answer, together with his evidence as to the management of his car, and of his belief that the accident was about to happen when he saw the boy step off the sidewalk, was sufficient to exasperate the jury, and that probably led to the rendition of so large a verdict. But as the defendant was liable only for the negligence and carelessness of the driver, these positive and unfeeling answers given by him could not be used as circumstances to aggravate the plaintiff's right to damages, and, so far as such use was probably made of the answers of the driver, the verdict is unwarranted; and when that may be found to be the case in actions of this description, it has been held that the court has the power to order a new trial, unless the plaintiff shall stipulate to reduce the verdict to what may appear not to be an excessive sum under the circumstances. *Collins* v. *Railroad Co.*, 12 Barb. 492; *Murray* v. *Railroad Co.*, 47 Barb. 196; *Coppins* v. *Railroad Co.*, 48 Hun, 292. Under the authority of the first case here referred to a verdict for the sum of $10,000 would be as large as the jury should render in a case of this description, and the authorities cited in this and the other cases support that view. On this part of the case, therefore, the judgment and order should be reversed, and a new trial ordered upon payment by the defendant of the costs of the trial and $10 costs of opposing the motion, with costs of the appeal to the appellant, to abide the event, unless the plaintiff within 20 days after notice of this decision shall stipulate to reduce the verdict to the sum of $10,000; and, if that stipulation shall be given, then the judgment as so modified should be affirmed, without costs of the appeal to either party.

BRADY, J., concurs.

VAN BRUNT, P. J.   I dissent upon the·ground that the admission of the evidence that there was ice on the railroad track between the rails, for the purpose for which it was offered, was error, and extremely prejudicial to the defendants.