### RODNEY v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, *Appellant.*

#### In Banc, March 19, 1895.

1. **Railroad**: PERSONAL INJURY: EVIDENCE. In an action against a railroad company by a switch foreman for injuries alleged to have been received while uncoupling cars, caused by a defective drawhead, an answer by defendant's assistant superintendent to the question: "State if an expert switchman, while those cars passed backward and forward, coupling and uncoupling them, if a car was in that condition, would likely be noticed,—the condition of the drawhead," was properly excluded because of the indefinite character of the question and particularly where there was no evidence tending to prove that the plaintiff ever coupled, or attempted to couple, the defective car.

Rodney v. The St. Louis Southwestern R'y Co.

2. ———: ———: EVIDENCE: EXPERT TESTIMONY. In order to render the opinion of an expert witness, as to whether one engaged in uncoupling a defective car, could have discovered the condition of the drawhead in time to avoid the injury, admissible, a proper hypothetical question should be put to him embracing the particular facts in the case which the evidence proved or tended to prove, so that the jury could see whether the facts assumed were consistent with the facts proved.

3. ———: ———: DEFECTIVE CAR. In an action by a switch foreman against a railroad company for injuries alleged to have been caused by a defective car which defendant admitted it knew to be in such condition, and which, as the uncontradicted evidence shows, it furnished plaintiff in the usual way to be handled in the line of his duty, the defendant is liable, in the absence of contributory negligence on the part of plaintiff, if the defects were not obvious and could not have been discovered by the exercise of reasonable care and caution, and the car was not marked in any way, so as to convey to employees the information that it was in an unsafe condition.

4. ———: MASTER AND SERVANT: DUTY TO FURNISH SAFE APPLIANCES: DELEGATION OF DUTY. The duty of the master to furnish safe appliances and machinery for the use of its servants in the course of their employment is an imperative and continuous one; in the case of a defective car, this duty runs with the car wherever it goes and demands of the master that he repair it, or warn the servants required to handle it of its dangerous character. Such duty is a personal duty of the master to whomsoever delegated, and, if neglected by those to whom delegated, their negligence is that of the master. •

5. ———: ———: ———: ———. Where a defective car was marked and ordered to be taken out of a train and placed upon the repair track, but the servants of the company, in violation of the order, placed it in a train without any danger mark upon it, their negligence is that of the company, and another servant who, without fault on his part, is injured because of such defect, while handling the car in the usual course of his employment, can recover for the injury.

6. ———: PERSONAL INJURIES: DAMAGES: INSTRUCTION. In an action for personal injuries, an instruction on the measure of damages to the effect that while the evidence may not prove any specific sum in dollars and cents that plaintiff may have been damaged by reason of his physical pain and mental anguish, yet the jury might allow him what they believe to be just and fair to compensate him for such suffering is not objectionable upon the ground of being too indefinite in not prescribing a standard for the measurement of the damages to be allowed for physical pain and mental suffering, or in not confining the jury to the amount they should find from the evidence ought to be allowed therefor.

7. ———: ———: ———: EXCESSIVE VERDICT. In an action by a switch foreman for personal injuries received when he was about twenty-eight years of age, strong and healthy and earning about $100 per month, his arm being badly mashed between the elbow and shoulder, causing intense pain and necessitating amputation thirteen days after the accident, after which erysipelas set in all over his body and continued eight or ten days, producing great suffering; he was confined to the hospital for eight weeks, spent about $200 for board, medical attention, medicine and nursing and is a cripple for life and dependent on manual labor for support, a verdict for $12,500, while large, is not so excessive as to induce the belief that it is the result of favor, passion or prejudice and to entitle the defendant as matter of right to have the judgment reversed for that reason.

8. Practice in Supreme Court: REMITTITUR. The supreme court has no power to require a *remittitur* as a condition of the affirmance of the judgment of the trial court in actions for damages for personal injuries. (BRACE, C. J., and MACFARLANE and BURGESS, JJ., *dissenting*).

*Appeal from Mississippi Circuit Court.*—HON. H. C. O'BRYAN, Judge.

AFFIRMED.

*Sam. H. West* and *W. H. Miller* for appellant.

(1) The instructions given to the jury by the court (on its own motion) as to the obligation of the defendant to the plaintiff as from a master to his servant are erroneous. It was only the duty of the defendant to exercise ordinary care to provide cars that were reasonably safe. These instructions made the defendant the insurer of their safety. *Gutridge v. Railroad,* 105 Mo. 520; *Browning v. Railroad,* 27 S. W. Rep. 644; *Corey v. Railroad,* 86 Mo. 635; *Hamilton v. Mining Co.,* 108 Mo. 364; *Railroad v. Davis,* 23 S. W. Rep. (Tex.) 306; *Wonder v. Railroad,* 32 Md. 411; *Railroad v. Bell,* 12 S. W Rep. (Tex.) 321; *Hudson v. Railroad,* 41 Am. & Eng. Railroad Cases (N. Car.), 348; *Railroad v. Snyder,* 14 Sup. Court Rep. 756; *Railroad v. Duffey,* 35 Ark. 602; Cooley on Torts, 557; Bailey,

Mas. Liability to Servant, p. 94; Wood, Master and Servant, secs. 320, p. 684; *Leonard v. Collins*, 70 N. Y. 90; McKinney on Fellow Servant, sec. 24. (2) The court erred in its instructions to the jury by taking from the jury the question of negligence. Negligence is a question of fact for the jury to pass upon. It was a question of fact for the jury to determine as to whether the defendant was negligent, the evidence being conflicting. *Gutridge v. Railroad*, 105 Mo. 520; Wood on Master and Servant, sec. 345, p. 706; *Barry v. Railroad*, 98 Mo. 62; 2 Thompson on Trials, sec. 1664, *et seq.* (3) The instructions given by the court are misleading and not responsive to the issues as made by the pleadings and the evidence. Authorities under point 1. (4) The court erred in refusing instructions requested by the defendant. *Gessley v. Railroad*, 26 Mo. App. 156; *McMurray v. Martin*, 26 Mo. App. 437; *Doan v. Railroad*, 38 Mo. App. 408; *McDonald v. Railroad*, 32 Mo. App. 70; *Stocker v. Green*, 94 Mo. 280. *First.* There was evidence tending to show that the car was inspected and carded or marked signifying its defective condition by defendants car inspector who ordered it taken out of train and placed on the repair track by a switch foreman. If such switch foreman placed the car with others and did not place on the proper track, such acts were the direct cause of the injury to plaintiff. The switch foremen, of whom plaintiff was one, worked under one and the same common directing superior, the yardmaster, and in the same department of service of the same master and hence are fellow servants and the defendant would not be liable to plaintiff for his injuries. *Foster v. Railroad*, 21 S. W. Rep. (Mo.) 216; *Relyea v. Railroad*, 112 Mo. 86; *Murray v. Railroad*, 98 Mo. 573. *Second.* It is the province of the jury to determine and find, under proper directions from the court whether the rela-

tion of fellow servants existed. The question should have been submitted to the jury. (5) The instructions given by the court on the measure of damages are improper, vague, indefinite and uncertain. *Hawes v. Stock Yards Co.*, 103 Mo. 60; *Wilburn v. Railroad*, 36 Mo. App. 203; *Murray v. Railroad*, 101 Mo. 236; *Stephens v. Railroad*, 96 Mo. 207; *Britton v. Railroad*, 51 N. W. Rep. (Mich.) 276; *Railroad v. Stone*, 49 Fed. Rep. 209; *Railroad v. Thornsberry*, 17 S. W. Rep. 521; 2 Thompson on Trials, p. 1472; *Matney v. Grain Co.*, 19 Mo. App. 107. (6) The court erred in refusing and excluding testimony offered by the defendant which was competent, relevant and material. *Haynes v. Christian*, 30 Mo. App. 198. (7) The damages awarded by the jury are excessive and show that the jury were either actuated by malice, bias or a misconception of the measure of damages. *Dougherty v. Railroad*, 97 Mo. 166; *Griffith v. Railroad*, 98 Mo. 166; *Adams v. Railroad*, 100 Mo. 155.

*Wilson & Moore* and *Wilson Cramer* for respondent.

(1) The proximate cause of the injury to plaintiff was the defective condition of the coupling appliance of the Bellville car. Shear. & Redf. on Neg. [3 Ed.], p. 10, sec. 10; *Banks v. Railroad*, 40 Mo. App. 458; *Parsons v. Railroad*, 94 Mo. 286. (2) The petition sets out specifically the nature of the defect, and the answer "admits that the car mentioned in plaintiff's petition was in bad order and in a dangerous condition, but avers that defendant had so discovered it to be on the seventeenth day of December, 1891." This is a direct admission of the defect alleged in the petition. (3) Besides this admission there is the testimony of the car inspector, James J. Carey, who swears that on the

night of the seventeenth, or morning of the eighteenth of December, he examined the car and found the back follow-plate broken. Notice to the car inspector was notice to defendant. *Dutzi v. Geisel*, 23 Mo. App. 676; *Porter v. Railroad*, 71 Mo. 66; *Covey v. Railroad*, 86 Mo. 635. (4) The negligence of the car inspectors was the negligence of defendant. Car inspectors and trainmen are not fellow-servants. *Harper v. Railroad*, 47 Mo. 567; *Brothers v. Carter*, 52 Mo. 372; *Long v. Railroad*, 65 Mo. 225; *Carter v. Railroad*, 78 Mo. 567. (5) It was the duty of the defendant to know the condition of the car on each succeeding day it was used, after acquiring knowledge of its defective condition. *Parsons v. Railroad*, 94 Mo. 286; 29 Atl. Rep. 380. (6) The fact that the car was a foreign one does not change the rule. The duty of inspection is the same. *Gutridge v. Railroad*, 94 Mo. 468; *Railroad v. Williams*, 24 S. W. Rep. (Ky.), 1. (7) The condition of the Bellville car was such as directly and necessarily to imperil the life of every brakeman who undertook to couple or uncouple it, and, though defendant had actual knowledge thereof, it made no effort to repair the car before loading it with cotton. Plaintiff had no notice of the defect; it was defendant's duty to warn him of the danger. *Dowling v. Allen & Co.*, 74 Mo. 13; *King v. Railroad*, 8 Am. & Eng. R. R. Cases, 119; 11 Am. & Eng. R. R. Cases, 193. (8) Plaintiff had no notice of the defective condition of the drawbar of the Bellville car, and, in the absence of such knowledge, had the right to assume that it was in proper order. *Porter v. Railroad*, 71 Mo. 66; s. c., 60 Mo. 160; *Condon v. Railroad*, 78 Mo. 567; *Dillingham v. Heardin*, 26 S. W. Rep. —; *Gutridge v. Railroad*, 105 Mo. 520. (9) It is the duty of the master to furnish his servant with safe and suitable machinery and to keep the same in repair. *Coontz v. Railroad*, 26 S. W. Rep. 661. (10) This duty is a

personal duty, which the master can not delegate to another so as to escape liability for injuries resulting from defective machinery. *Coontz v. Railroad*, 26 S. W. Rep. 661. (11) Defendant sets up that the car in question was placed upon the track where plaintiff found it by some fellow-servant of plaintiff, in violation of a rule of the company. If this was the act of a fellow-servant, it was not the cause of the injury—the direct cause was the defective drawbar. A servant may recover for an injury caused by the combined negligence of master and a fellow-servant. Thompson on Neg., p. 981; *Young v. Iron Co.*, 103 Mo. 324; *Bluedorn v. Railroad*, 108 Mo. 439. (12) The instruction given by the court on the measure of damages is supported by the decisions of this court. *Whalen v. Railroad*, 60 Mo. 323; *Porter v. Railroad*, 71 Mo. 66; *Buck v. Railroad*, 108 Mo. 179. (13) The verdict is not excessive.

### DIVISION ONE.

BRACE, P. J.—This is an action for personal injuries sustained by the plaintiff while engaged as switchforeman in the service of the defendant in its yards at Bird's Point, in which plaintiff obtained a judgment for $12,500, and the defendant appeals.

The gravamen of the plaintiff's cause of action, charged in the petition, is: that on the twenty-first day of December, 1891, there was stored on the side tracks in said yards a certain car loaded with cotton; that it was plaintiff's duty, in conjunction with others managing the switch engine, to place said car into a train for forwarding to its destination, and in so doing it was his duty to uncouple said car from others to which it was attached and in order to perform this duty it became necessary that the engine should back up the train "and give him the slack" so that the coupling

pin could be removed; that while engaged in the performance of such duty, after giving the signal to back up, the plaintiff stepped between the cars as the engine eased up the slack and endeavored to draw the coupling pin with his left hand, when the drawhead of the car gave way and was forced back under the car to which it belonged, thereby allowing the projecting timbers, known as the deadwoods, on the end of said cars to come together, catching and fracturing the left arm of plaintiff, breaking, crushing and mangling the arm between the shoulder and the elbow; that at the time said injury was inflicted upon the plaintiff said car was not in good condition, but was defective in that it was not provided with the necessary and usual accompaniments of follow-plates and springs, which hold the drawhead in place during a concussion and prevent the same from being forced back under the car and the deadwoods from coming together; that said defect was not known or apparent to the plaintiff, but was well known to the defendant or ought to have been so known.

The answer denies the allegations of the petition, except that it admits that the car was in bad order and dangerous condition, but avers that defendant had so discovered it to be on the seventeenth day of December, 1891, and had so marked said car as to convey an order to the next employee handling it that it was dangerous and was to be handled with caution, but that either the plaintiff or some fellow servant of plaintiff had negligently disregarded said order or warning, and that in consequence of such negligence of plaintiff or his fellow servant said car had been placed in the train of cars where it was when the plaintiff received the injury; that plaintiff's injury resulted from this and other acts of contributory negligence by plaintiff.

The evidence will be noticed, so far as is necessary,

in the course of the opinion.  The court refused all the instructions asked for by the defendant, except the usual one upon the credibility of witnesses, and submitted the case to the jury under the following instructions:

"1.  The court instructs you, gentlemen of the jury, that the law imposes upon the defendant the duty to provide reasonably safe cars for the purposes for which they are designed, and that, when cars shall be disabled, unsafe or dangerous, to give proper warning or notice of such unsafe or dangerous condition to such employees as may be charged with their handling, and that among other considerations for the imposition of this duty is the protection of their employees engaged in handling and operating them from unnecessary danger of injury or death, and that any failure upon the defendant's part to comply with this duty is negligence as matter of law on defendant's part, whether such want of compliance is with respect to cars owned by defendant or owned by other parties, if defendant shall have them on their road to be handled and operated by their employees.

"2.  If you believe from the evidence that while plaintiff was in the defendant's employ, and in the discharge of duties imposed upon him by the defendant, by virtue of such employment and without knowledge of any defect or unsafe condition of cars which he was handling, and while exercising caution and prudence in the discharge of said duty, had his arm crushed and broken by and between the deadwoods of one car and the truss pin of another, occasioned by such truss pin and deadwood meeting, which resulted from a defective drawbar, or drawhead, rendering the car unsafe; and if you further believe such defect was not obvious to one exercising the duties of switchman, and that said car was not marked in any way so as to convey to the

employees of defendant the information that it was in unsafe condition, or to put them upon inquiry as to its true condition, then you will find the issues for the plaintiff.

"3.   If from the evidence you believe that plaintiff could have avoided the accident or injury to himself by prudence, caution or care, your verdict should be for the defendant.

"4.   If from the evidence you believe plaintiff, or a reasonably careful and prudent person circumstanced as plaintiff was, could have discovered the defective condition of the car coupling or.car by which he was hurt by exercising prudence and care in discharging the duty imposed by his employment, then you will find the issues for the defendant, whether plaintiff knew of the condition of the car or not.

"5.   If from the evidence you believe that there was warning card or marks or words placed on the car by which plaintiff was injured, and was there at the time plaintiff was injured; that the said cards or warning marks or words were in a place that could be seen, and were legible, then plaintiff can not recover, whether he had observed said warning sign or not, and if you so find the facts your judgment should be for the defendant.

"6.   If under the law and evidence you find the issues in this cause for the plaintiff, the damages which you may award him should be compensatory only, and should not exceed the amount sued for in the petition. And in estimating such damages you will take into consideration and allow him for expenses incurred in treating his injuries.   Also, compensation for the time he lost during his illness occasioned by his injury.   And while the evidence may not prove any specific sum in dollars and cents that plaintiff may have been damaged by reason of his physical pain and mental anguish,

yet you may allow him what you may believe to be just and fair to compensate him for such sufferings.  You will also take into consideration in estimating his damages his diminished capacity for earning money, if you so believe from the evidence, and on account thereof make him such allowance as you may believe to be fair and just for any loss that you may believe from the evidence he has sustained in the past by reason thereof, and for any loss you may believe from the evidence he may sustain in his future earning, by reason of such diminished earning capacity as may be occasioned by his injury.''

All the objections made to the rulings of the trial court, except one upon the admission of evidence, may be considered in connection with the instructions.

.1.   It is contended that the court committed reversible error in refusing to permit the defendant's assistant superintendent, after stating the condition in which he found the defective car after the accident, to answer the following question: "*Q*. State if an expert switchman, while those cars passed backwards and forwards, coupling and uncoupling them, if a car was in that condition, would likely be noticed—the condition of the drawhead?''  The examination of the witness was not pressed further.  The court probably refused to permit an answer because of the vague and indefinite character of the question, and because there was no evidence tending to prove that the plaintiff ever coupled or attempted to couple this defective car.  If the counsel desired to have the opinion of this witness as to whether the plaintiff could, in the act of *uncoupling* this car, have discovered the condition of the drawhead in time to avoid the injury, a proper hypothetical question should have been put to him, embracing the particular facts which the evidence in the case proved or tended to prove, so that the jury could see whether

the facts assumed were consistent with the facts proven, and thus could have appreciated the value of the answer. Any advantage that the defendant could have derived from an answer to this question would have been meretricious, and the court committed no error in refusing it.

2. The gist of the whole complaint against the action of the court in refusing the defendant's instructions and in giving those set out is, that the defendant was thereby held to a degree of care not warranted by the law, and an elaborate argument is made, and many authorities cited, to establish the proposition that the defendant is not an insurer of the safety of the cars which it furnishes its employees to be operated upon by them in the line of their duty, but was only required to exercise ordinary care in furnishing a reasonably safe car for such purposes. This argument and the authorities cited are all well enough in cases to which they are applicable, but such is not the case in hand.

It will be observed from the pleadings that no issue was made upon the condition of the car at the time the injury occurred. It was admitted in the answer that the car was then "in bad order and in a dangerous condition" and that defendant knew it and had known it for three days before the plaintiff was required, in the line of his duty, to operate upon it. The questions at issue were not upon the condition of the car at all, but upon the conduct of the master and servant in respect to a car admitted to be in a dangerous condition and which the master knew to be in such condition, and which there was not a particle of evidence tending to show was furnished to the plaintiff to be operated upon in the line of his duty by any other person than the defendant, or in any other manner than cars had always theretofore been furnished to him by his master. This was the case upon which the court

was called upon to instruct, and upon which it did instruct, in this instance. By these instructions, the jury was in effect told that in the absence of contributory negligence upon the part of the plaintiff, the defendant was liable, if it furnished the plaintiff the car in question to be operated by him in the line of its duty, if such car was, at the time he was called upon to operate it, defective in the particulars therein mentioned, and that such defects were not obvious, and could not have been discovered by the exercise of reasonable care and caution, and the car was not marked in any way so as to convey to employees of defendant the information that it was in an unsafe condition.

Under these instructions the jury could not have found for the plaintiff without having first found that he had not been guilty of any negligence in the discharge of his duties; that his injuries resulted from the defective condition of the car; that the defects therein were latent and could not have been discovered by the plaintiff in discharging the duties required of him by the exercise of proper care and caution; and that he was not warned of the dangerous condition of the car by his master. We fail to find wherein the law announced in these instructions is erroneous, when applied to the facts in the case, unless it can be held that a master is not liable for an injury to his servant resulting from the careful use of a defective instrument given to him by the master to be operated upon in his service—dangerous by reason of a latent defect known to the master, but unknown to the servant, and of the existence of which the master gave the servant no warning, a monstrous doctrine that we hazard nothing in saying is not supported by an adjudicated case.

While we do not understand the learned counsel for the defendant to undertake to uphold such a doctrine, they do seem to maintain that the defendant's

duty with respect to this defective car was the same, *after* it had been discovered to be defective, as it was before; and that it was charged with the same measure of care only as *before;* and that the jury ought to have been so advised; and having on the seventeenth of December inspected this car, found it to be out of repair and dangerous and so marked it, and ordered it to be taken out of the train and placed upon the repair track, that it thereby discharged its full duty to the plaintiff in respect to said car, and if afterward its servants, in disregard of its orders, failed to place the car upon the repair track and leave it there until repaired, but on the contrary, loaded it up and placed it in a train upon a track to be forwarded to its destination as a sound car without any danger mark upon it, and the plaintiff was injured in handling the car in the line of his employment without negligence upon his part, by reason of its defective condition, his injuries were the result of the negligence of defendant's servants and the defendant ought not to be held liable, because such servants were the plaintiff's fellow servants.

Herein lies the vice of the whole argument. The defendant did not discharge its full duty to the plaintiff by inspecting and marking the car. The duty to furnish reasonably safe appliances and machinery for the use of its servants in the course of their employment was not only an imperative but a continuous duty. It ran, so to speak, with the defective car from the moment it was discovered to be defective, continually calling upon the master to repair it, or to warn those of its servants whom it required in the course of their employment to handle it of its dangerous character. These duties were not only imperative and continuous, but they were personal duties of the master, to whomsoever delegated, and if neglected by those to whom

they were delegated, their negligence was the negligence of the master. *Gibson v. Railroad*, 46 Mo. 163; *Devitt v. Railroad*, 50 Mo. 302; *Brothers v. Cartter*, 52 Mo. 372; *Dale v. Railroad*, 63 Mo. 455; *Long v. Railroad*, 65 Mo. 225; *Elliott v. Railroad*, 67 Mo. 272; *Dowling v. Allen*, 74 Mo. 14; *Hall v. Railroad*, 74 Mo. 298; *Condon v. Railroad*, 78 Mo. 567; *Parsons v. Railroad*, 94 Mo. 286; *Bowen v. Railroad*, 95 Mo. 268; *Sullivan v. Railroad*, 107 Mo. 67; *Brann v. Railroad*, 53 Iowa, 595; *Bessex v. Railroad*, 45 Wis. 477; *Laning v. Railroad*, 49 N. Y. 521; *Railroad v. Herbert*, 116 U. S. 642.

The defendant's yards at Bird's Point were well equipped. It had there its car inspectors, master mechanic, assistant superintendent, transfer foreman, yard masters and other officials charged with the duty of managing and controlling the repair, loading, transferring and moving of all trains and cars within such yards. The plaintiff was not their fellow servant. He did not work with them but under them. They ordered, he operated, and by their negligence or the negligence of some one of them, or of some one subject to their orders, to whom they delegated the master's duty, he was required to handle this dangerous car without warning. Their negligence was the defendant's negligence, for which it should be held liable— the jury having found that the plaintiff himself had not been guilty of any negligence.

We think the issues in the case were fully and fairly presented to the jury by the instructions given by the court and that there was no error in refusing those asked for by the defendant.

3. The instruction on the measure of damages is criticised as being too indefinite in not prescribing a standard for the measurement of the damages to be allowed the plaintiff for physical pain and mental

suffering, or rather in not confining the jury to the amount which they should find from the evidence that he ought to be allowed therefor. The reading of the instruction is a sufficient answer to this hyper-criticism.

4. It is finally insisted that the judgment is excessive and ought to be reversed for that reason. The evidence shows that the plaintiff at the time of the injury was about twenty-eight years of age, a strong, healthy man; was earning in his employment about $100 per month; had been engaged in railroading five and one half years; before that, in farming. His arm was terribly mashed between the elbow and shoulder, inflicting upon him the most intense pain and necessitating amputation of the arm, which took place thirteen days after the accident, the whole arm being then rotten and the bone fractured. Erysipelas then set in, went all over his body and continued eight or ten days, during all of which time he says he suffered unspeakable agony, was confined to the hospital for about eight weeks, spent about $200 for board, medical attention, medicines and nursing, is dependent upon manual labor for support and is a cripple for life. The verdict is large, we think excessive, but not so excessive, under the circumstances of the case, as to induce the belief that it was the result of favor, passion or prejudice on the part of the jury. The appellant, therefore, is not entitled as of right to have the judgment reversed for this reason.

This disposes of the appellant's appeal and of all its rights thereunder, but we are not necessarily done with the case. The supreme court is required by statute in every case to "award a new trial, reverse or affirm the judgment or decision of the circuit court, or give such judgment as such court ought to have given, as to them shall seem agreeable to law." R. S. 1889, sec. 2304. We have now to deal with the plaintiff's

judgment only, and whatever disposition of this case we may make, the appellant can have no right to complain. It is made from a sense of justice, and the duty we owe to the fair administration of the law. The jury having, without error in the trial, and without favor or prejudice, found the issues for the plaintiff, he was entitled absolutely to have judgment rendered thereon in his favor upon those issues, but was he so entitled to have judgment entered in his favor for the full amount of the damages which they assessed in his favor in consequence of such finding, although the trial court was satisfied that the damages were excessive?

In the recent case of *Burdict v. Railroad*, 123 Mo. 221, this question was maturely considered and elaborately discussed and the ground need not be gone over again in this opinion. A majority of this court held in that case that the trial court, in case of a verdict for excessive damages in an action for personal injuries, had the right to require a remittitur of the excess as a condition of entering judgment on the verdict, and if that court failed or refused to do so, on appeal, this court had the power to require such remittitur as a condition of the affirmance of the judgment. Such being the law, and being satisfied that the damages awarded the plaintiff in this case are excessive, the judgment will be affirmed upon condition that the plaintiff within thirty days remits $2,500 thereof; otherwise, the judgment will be reversed and the cause remanded for a new trial in order that a correct assessment of the damages may be obtained. BLACK, C. J., and MACFARLANE, J., concurring, BARCLAY, J., in the opinion, except paragraph 4 and the result, to which he dissents.

Rodney v. The St. Louis Southwestern R'y Co.

IN BANC.

PER CURIAM.—The foregoing opinion of BRACE, J., in division number 1, except the fourth paragraph, is adopted as the opinion of the court in banc. In the fourth paragraph, BRACE, C. J., and MACFARLANE and BURGESS, JJ., only, concur; BARCLAY, GANTT, SHERWOOD and ROBINSON, JJ., being of the opinion that this court has no power to require a remittitur as a condition of affirmance in this class of cases. The order requiring a remittitur is, therefore, set aside, leave given to the respondent to withdraw the same, and the judgment of the circuit court affirmed; all concurring, except SHERWOOD, J., who dissents.