O'DONNELL v. AMERICAN SUGAR–REFINING CO.

(Supreme Court, Appellate Division, Second Department. June 6, 1899.)

1. MASTER AND SERVANT—PERSONAL INJURIES—FELLOW SERVANTS.

In an action by an employé for damages for injuries received from defendant's machinery, which was alleged to have been carelessly started by the foreman. the fact that it was started by another employé will not preclude plaintiff's recovery, where he shows such employé was subject to the direction of the foreman, and started it by his order.

2. SAME—SETTING ASIDE VERDICT—EVIDENCE.

A verdict in an action for damages by an employé for injuries occasioned by the alleged negligent starting of machinery will not be set aside, as against the weight of the evidence as to the happening of the accident, where it is fully sustained by the plaintiff's testimony, though he is contradicted by the foreman and an employé whose negligence caused the injury.

3. SAME—INCOMPETENCY OF SERVANT—EVIDENCE.

The incompetency of an employé for whose negligence it is sought to hold the employer responsible must be shown by proving specific acts of such employé, and then, that the master knew or should have known of such incompetency; and such knowledge may be shown by evidence that his incompetency was generally known in the community.

4. SAME—DAMAGES—EXCESSIVENESS.
    A verdict for $15,000 in favor of an employé for loss of his right hand is excessive, but, if reduced to $10,000, will be allowed to stand.

Appeal from special term, Kings county.

Action by Martin O'Donnell against the American Sugar-Refining Company. From a judgment for plaintiff, and an order denying its motion for a new trial, defendant appeals. Affirmed, on condition.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

John Notman (William Allen Butler, Jr., on the brief), for appellant.

Abraham H. Dailey (James D. Bell, on the brief), for respondent.

PER CURIAM. The plaintiff in this action recovered a verdict for $25,000 damages on account of personal injuries sustained by him while in the employ of the defendant by reason of the negligence of an incompetent fellow servant. Upon a motion to set aside the verdict as excessive, the trial judge determined to set it aside unless the plaintiff should consent to reduce the recovery to $15,000. This he did, and the case now comes before us upon an appeal from the reduced judgment, and also from an order denying the motion for a new trial.

The plaintiff was employed as an oiler of machinery, and it occasionally became his duty to replace belts when they were thrown off the pulleys, in the part of defendant's refinery where he worked. In order that this might be done in safety, the movement of the machinery had to be stopped for the time being. On the occasion of the accident, according to his account, while the plaintiff was engaged in thus replacing a belt, the machinery was carelessly started by the direction of one Fritz Helwig, the foreman of the room; and the plaintiff's right arm was caught in the moving belt or pulley, and so injured that it was necessary to amputate it about halfway between the hand and the elbow. The defendant presents an entirely different picture of the manner in which the plaintiff was hurt. The testimony of Helwig and two men who were working under him at the time tends to prove that, after the plaintiff had endeavored to put back the belt without success, he was ordered to stand aside while the belt was put on by these witnesses, and the machinery was then started after a warning cry to everybody to look out. The explanation of the accident offered by the defendant is that the plaintiff approached the machinery without being observed by the others, either for the purpose of making a further adjustment of the belt, or for some other reason, and had his arm drawn into the pulley while thus interfering with it after it had been set in motion.

The machinery was actually started, not by the foreman, Helwig, but by one of the men working under him, named Victor. There was no suggestion that Victor himself was incompetent; and the first point made in behalf of the defendant on the present appeal is that inasmuch as the accident was due to the direct act of Victor, rather than to the command of Helwig, the defendant cannot be

charged with any liability on account of the incompetency of
Helwig. It is apparent, however, that the relation of Victor to
Helwig was such that he was bound to obey the directions of
the foreman in all matters relating to his work, and that on this
occasion he did simply what he was directed to do by the fore-
man. Of course, the fault would rest upon him, rather than upon
Helwig, if he was in a position to see that his act would injure the
plaintiff, while Helwig, who gave the order, was not aware of that
fact. They both insist, however, that the plaintiff was not at work
at the belt when the machinery was set in motion. According to
their account of the accident, it occurred solely through the fault
of the plaintiff himself. If, however, the jury believed the plain-
tiff's testimony, they might well find that the efficient cause of the
accident was the command to start the machinery which Helwig
gave to Victor, and which Victor obeyed without looking to see,
or at all events without perceiving, where the plaintiff was at
the time.

The second point presented in the brief and argument for the
appellant is that the verdict should be set aside as against the
weight of evidence as to the happening of the accident. On the one
side we have the testimony of the plaintiff, and on the other the
testimony of the foreman and his two subordinates. The account
which the plaintiff gives of the circumstances under which he was
hurt cannot be reconciled with that given by these three witnesses
for the defendant. It is truly said that the plaintiff is deeply in-
terested in the event of the action, and it is argued that Helwig
and Victor can be regarded as unbiased, inasmuch as they were no
longer in the employment of the American Sugar-Refining Com-
pany at the time of the trial. It may nevertheless be observed that
both of these witnesses might naturally be actuated by a desire to
shield themselves from blame in having carelessly started ma-
chinery under such circumstances as to maim a fellow workman for
life. On the whole case, and after reading and re-reading all the
testimony in the record relating to the accident itself, we find it
impossible to agree with the learned counsel for the appellant that
the verdict was against the weight of evidence.

The third point upon which the defendant relies is that there
was no evidence sufficient in law to sustain a finding that Helwig
was incompetent. We are likewise unable to assent to this propo-
sition. The plaintiff introduced testimony amply sufficient to es-
tablish the incompetency of Helwig, and the defendant's knowl-
edge of his incompetency. In doing this, his counsel was careful
to observe the rule which has recently received the approval of the
court of appeals in Park v. Railroad Co., 155 N. Y. 215, 49 N. E. 674,
where Haight, J., says:

"We are aware that in some states the courts have permitted incompetency
of servants to be shown by general reputation, but we have never gone to
that extent in this state. It appears to us that the safer and better rule is to
require incompetency to be shown by the specific acts of the servant: and then,
that the master knew, or ought to have known, of such incompetency. The
latter may be shown by evidence tending to establish that such incompetency
was generally known in the community."

There are upwards of 100 exceptions in the record to the rulings of the learned trial judge upon the admission and exclusion of evidence. No reference is made to any of these exceptions specifically in the brief for the appellant; and, indeed, nothing is said about any of them, except that the rule stated in the Park Case, supra, should have shut out all the testimony of the plaintiff, taken under exception, as to complaints concerning Helwig's incompetency, or as to his general reputation for incompetency. As already intimated, however, the rule laid down in that case seems to have been carefully observed, instead of being disregarded.

Finally, we come to the proposition that in any event the amount for which the verdict was allowed to stand by the trial court is excessive. We think it is. The subject of excessive damages has recently been discussed so frequently that it is unnecessary to repeat or reconsider the rules which should regulate the action of the court in setting aside verdicts on this ground. We appreciate the serious character of the injury which the plaintiff has sustained, in the loss of his right hand. In one sense, of course, no amount of money can constitute adequate compensation for an injury of this sort. In the view of the law, however, an attempt to value approximately the usefulness of the various limbs of the human body has to be made in cases of this kind; and while no absolute or fixed standard of valuation can be maintained, as applicable to all cases, or even classes of cases, yet instances sometimes occur in which the verdict is so much larger than the amount ordinarily awarded by juries for similar injuries as at once to impress the judicial mind with its extravagance. Such was evidently the impression made upon Mr. Justice MATTICE by the verdict in the present case of $25,000 for the loss of a right hand. Even at $15,-000, the amount to which the plaintiff consented to reduce it, the recovery seems to us excessive; and on this ground we feel constrained to order a new trial, unless the plaintiff prefers to stipulate for a further reduction to $10,000. On the other hand, if he is willing to do this, the judgment as so reduced will be affirmed.