[No. 1931]

## FREDERICK A. KNOCK, RESPONDENT, *v.* TONOPAH AND GOLDFIELD RAILROAD COMPANY (A CORPORATION), APPELLANT.

[145 Pac. 939]

OPINION OF TALBOT, C. J.

1. APPEAL AND ERROR—VERDICT—CONCLUSIVENESS.

Where the evidence is conflicting, the verdict will not be disturbed on appeal.

2. MASTER AND SERVANT — INJURY TO SERVANT — CONTRIBUTORY NEGLIGENCE.

A railroad employee's failure to discover that the tongue in the knuckle on a car was broken was not contributory negligence, where the tongue was broken on the previous day and the inspector failed to detect it.

3. APPEAL AND ERROR—QUESTIONS OF FACT.

Where testimony as to matters essential to a recovery is contradicted by physical facts, a verdict contrary to the physical facts must be set aside, but testimony contrary to a physical fact as to a matter not controlling affects only the credibility of the witnesses.

4. NEW TRIAL—CONDUCT OF COUNSEL AND JUROR.

That the attorney for the successful parties dined at the same table with a juror in a hotel does not alone justify the setting aside of the verdict.

5. APPEAL AND ERROR—EXCEPTIONS—IMPROPER ARGUMENT.

Where statements made before the jury by counsel for the successful party were to some extent provoked, and no exception was taken to them, the judgment would not be reversed, though the statements were erroneous.

6. DAMAGES—PUNITIVE DAMAGES—INJURY TO SERVANT.

Where injury to a railroad employee resulted from a broken tongue and a knuckle on a car not easily observable, or from the engineer backing his engine without signal, a verdict for punitive damages was unauthorized.

7. DAMAGES—PERSONAL INJURIES—EXCESSIVE DAMAGES.

A verdict for $25,500 for the loss of the right arm below the elbow of a man 29 years of age, with eleven years' experience in railroading in various positions, and earning about $170 a month as conductor and brakeman, is excessive, and will be reduced to $15,000.

APPEAL from the Fifth Judicial District Court, Nye County; *Mark R. Averill,* Judge.

Action by Frederick A. Knock against the Tonopah and Goldfield Railroad Company. From a judgment for plaintiff, defendant appeals. **Conditionally affirmed.**

*Campbell, Metson & Brown,* for Appellant.

*Berry & Cole* and *V. S. Thomas,* for Respondent.

By the Court, TALBOT, C. J.:

The plaintiff, a man 29 years of age, with eleven years of experience in railroading in various positions, and earning on an average about $170 a month as a conductor and brakeman, instituted this action to recover $25,500 damages for the loss of his right forearm, which was crushed between the couplers of ore cars while he was endeavoring to effect a coupling. The accident necessitated the amputation below the elbow. A verdict was rendered in favor of the plaintiff for the full amount claimed. On this appeal from the judgment and from the order denying the motion for a new trial, it is contended that the evidence is insufficient to justify the verdict; that misconduct of counsel for respondent warrants a reversal; that the court improperly instructed the jury; and that the damages are excessive.

[1] The opening brief gives a careful analysis of the

conflicting testimony. At other times and on the previous day he had acted as conductor of the appellant company. On the morning of the accident appellant was serving as brakeman. On his theory of the case, and under his testimony, the engineer backed up twice on his signal, but no coupling was accomplished on either compact, and for the purpose of ascertaining whether ore had fallen into it he went to examine the knuckle of the car, which was one of four or five desired to be coupled to the cars attached to the engine, and while he was making such examination the engineer, without signal, backed up the third time and crushed respondent's arm. His evidence in this regard is contradicted by the engineer and fireman, and appellant claims that the accident resulted from respondent's own carelessness in trying to make a gravity coupling while the cars, which were free from the engine, were moving on the grade. Under the conflicting evidence it was within the exclusive province of the jury to determine whether the accident was caused by the backing up by the engineer without signal, and, if it was so caused, the plaintiff is entitled to recover.

[2] For appellant it is also claimed that Knock should have been aware of the broken tongue in the knuckle which failed to couple, because, on the previous day, while he was acting as conductor, the engineer, owing to Knock's failure to signal, had backed into some cars, including this one, with such force as to break a knuckle on another car upon which a new knuckle had been placed, after examination by the company's inspector. If the tongue in the knuckle were broken on the previous day, the inspector failed to detect it, and the failure of Knock to become aware that it was broken was not such carelessness, or want of care on his part, as would warrant the engineer to back up without signal.

[3] It is urged that the case should be reversed because the plaintiff's testimony is contradicted by physical facts. If any physical fact made it impossible for the engineer to back up without signal and crush the respondent's arm, such fact would control, and the testimony in the case

of respondent would fall.    If his testimony regarding any matter essential to his recovery were contradicted by any physical fact, the case would have to be remanded. Testimony contrary to a physical fact regarding a matter which is not controlling may weaken the credibility of the witness, but is not ground for reversal.

[4-5] It appears that one of the counsel for respondent dined at the same table with one of the jurors in the hotel, but it is not shown he paid for the juror's meal, nor that anything improper in regard to the case appeared between them.    It is urged that statements made before the jury, by counsel for respondent, were erroneous, but, as they were to some extent provoked, and no exception was taken to them, they do not warrant a reversal.

The court instructed the jury that, under the law of this state, common carriers are liable to employees for damages which may result from negligence of the officers, agents, or employees of the common carrier, or by reason of any defect or insufficiency due to their negligence in its cars, engines, and appliances.    The statute upon which this instruction is based, the liability act of 1907 (Stats. 1907, c. 214), has been sustained as constitutional by this court in *Lawson* v. *Halifax Mining Co.*, 36 Nev. 591, 135 Pac. 611, 138 Pac. 261; writ of error to Supreme Court of the United States granted, 36 Nev. 646.

[6] If the accident resulted from a broken tongue and a knuckle not easily to be observed, or from the engineer backing without signal, or if the facts be as claimed by either the appellant or the respondent, there is nothing in the case which would warrant a verdict for punitive damages against the appellant, and respondent's recovery should be limited to a just and full compensation for the injury sustained.

[7] Counsel for appellant say that, if it be held that there is a liability against the appellant, and if damages are to be allowed, they are of the opinion that, considering all the circumstances, and the Burch case as a fair standard of measurement, a verdict of $10,000 would have been fair and ample.    Counsel for respondent contend

that, under the Burch case, the full amount of the verdict should be allowed.

In that case (32 Nev. 75, 104 Pac. 225, Ann. Cas. 1912B, 1166) we sustained a verdict for $20,000. When injured, Burch was 37 years old, earning about $100 a month, and was gradually advancing in the defendant's employment. While boarding a caboose, he was struck by a switch stand, thrown upon the track, and the cars ran over his left leg and right foot, necessitating amputation of the left leg three inches above the knee and three toes of his right foot. He grew weaker physically, and lost from fifteen to eighteen pounds. At times an artificial leg could be worn, but it irritated the stump and made it sore. By the contesting of his case in different courts, Burch had been delayed for many years in obtaining relief, and he had previously obtained a verdict for $18,000.

Although the respondent's was a most severe injury for the loss of an arm below the elbow, and, as said by counsel for respondent, the loss of a right arm is more serious than that of the leg, when we consider all the circumstances relating to the two cases, we conclude that the injury resulting to Knock was not as serious as the one caused to Burch.

Among the many cases in the books, we do not find any in which a sum as large as that awarded to respondent by the verdict was allowed to stand for the loss of an arm under conditions and results no more serious than those which relate to or flow from the accident suffered by respondent.

Among the largest verdicts sustained for somewhat similar injuries is that in the Fullerton case, 167 Fed. 1, 92 C. C. A. 463, in which there was an award of $16,500 to the first mate of a vessel, earning $150 per month, for the loss of his right arm near the shoulder, accompanied with much pain and suffering.

"In *Cleveland, Cinn., C. & St. L. Ry. Co.* v. *Hadley,* 170 Ind. 204, 82 N. E. 1025, 84 N. E. 13, 16 L. R. A. n. s. 527, 16 Ann. Cas. 1, the Supreme Court of Indiana sustained a

judgment for $10,000 for an injury to the elbow joint, caused by the falling of a window sash, affecting chiefly the ulnar nerve, resulting in a numb feeling in the arm and the little and ring fingers, and a shrunken condition of the muscles of the arm, and loss of grip." (*Forrester* v. *S. P. Co.*, 36 Nev. 296, 134 Pac. 769, 48 L. R. A. n. s. 1.)

Verdicts have been sustained for the loss of an arm, for $10,000 in *St. Louis S. R. R. Co.* v. *Groves*, 44 Tex. Civ. App. 63, 97 S. W. 1084, in favor of a brakeman 21 years of age, earning $100 per month, who lost the right arm between the shoulder and elbow; for $12,500 in *Rodney* v. *St. Louis S. R. R. Co.*, 127 Mo. 676, 28 S. W. 887, 30 S. W. 150, in favor of a switchman 28 years of age, earning $100 per month; for $7,000 in *Atchison R. R. Co.* v. *Sledge*, 68 Kan. 321, 74 Pac. 1111, in favor of a switchman 23 years of age, earning $80 per month; in *Sobieski* v. *St. Paul R. Co.*, 41 Minn. 169, 42 N. W. 863, for $5,000, in favor of a switchman 30 years of age, for loss of arm below the elbow; for $5,000 in *Mobile R. Co.* v. *Harmes*, 52 Ill. App. 650, in favor of a brakeman.

Verdicts have been held excessive for the loss of an arm, for $20,000 in *Chicago R. Co.* v. *Kane*, 70 Ill. App. 676, in the case of a laborer 19 years of age, earning $1 per day, and who had the arm amputated near the shoulder; for $13,000 in *Louisville R. Co.* v. *Lowe* (Ky.) 66 S. W. 736, in favor of a train inspector 34 years of age earning $1 per day; for $10,000 in *Illinois Central R. R. Co.* v. *Welch*, 52 Ill. 184, 4 Am. Rep. 593, in favor of a brakeman who lost the left arm.

Verdicts for $15,000 for the loss of an arm were reduced to $10,000 in the case of *Texas R. Co.* v. *Hartnett*, 33 Tex. Civ. App. 103, 75 S. W. 809; injury to locomotive engineer who lost the left arm near the elbow joint, in *Silberstein* v. *Houston Str. Co.*, 52 Hun, 611, 4 N. Y. Supp. 843; and in *O'Donnell* v. *American Sugar Refining Co.*, 41 App. Div. 307, 58 N. Y. Supp. 640, in which case a laborer lost the right arm below the elbow.

Reference is made to numerous other cases relating to such injuries in the extensive note in 16 Ann. Cas. 21.

We are not unmindful of the serious consequences relating to the loss of an arm; and, considering respondent's health and general condition, and occupations which he may learn to pursue, but in which he may not earn nearly so much as in his former employment, and the disability under which he must labor through life, we conclude that, under the circumstances disclosed by the present record, $15,000 would be a fair compensation for the injury which he sustained.

If within fifteen days respondent file in this case his written consent that the judgment be modified by reducing the amount allowed for damages for the injuries sustained to $15,000, an order may be made that the judgment be modified accordingly, and that it stand as so modified. If such consent be not so filed, the case will be remanded for a new trial.

NORCROSS, J.: I concur in the judgment.

[NOTE — This case having been submitted prior to McCARRAN J., becoming a member of the court, he did not participate.]