Hillsborough, }
  Oct. 4, 1904. }

### SHAW *v.* MANCHESTER STREET RAILWAY.

If a street railway employee voluntarily continues in the service, with knowledge of the corporation's failure to provide a sufficient number of cars for the accommodation of the business, he assumes the risk of injury from that cause.

A street railway company is not liable to a conductor for personal injuries resulting from the unauthorized act of another employee, who caused to be used for purposes of public travel a defective car which had been withdrawn from service by the proper official and marked for repairs.

CASE, for negligence. Trial by jury and verdict for the plaintiff. The defendants' motion for an order of nonsuit was denied, subject to exception. Transferred from the September term, 1903, of the superior court by *Peaslee*, J.

The evidence tended to prove the following facts: On Sunday, October 10, 1897, the plaintiff was conductor upon the forward one of two cars passing in a northerly direction over the defendant's railway in Elm street, Manchester, between the transfer station and the foot of Manchester street. The car stopped to allow a passenger to alight, and was run into by the rear car,—an open one,—in consequence of the motorman's inability to seasonably stop because of a defect in the brake staff at the forward end of the car. The plaintiff was injured by the collision.

The defendants had a master mechanic whose duties were "to see that repairs were properly done; cars safe to put on the street." If a car became disabled, it was reported to him or at the office by the conductor. A general inspection of cars was made at night by car inspectors acting under the master mechanic. If they discovered defects in a car which they were unable to repair themselves, they placed upon it a tag bearing the words "To be left in," and left a report of the fact on the master mechanic's desk. The tag indicated that the car was to be left in for repairs. The defendants also had a car starter and street inspector, whose duty it was to select, put out, and start cars from the car barn on the different lines, at the proper times, and to see that the cars were all running, or the men were attending to their duties. He had no authority to start a car that was tagged for repairs. The defendants were short of open cars for use on Sundays and holidays, and the plaintiff well knew the fact.

The defect in the brake staff of the rear car was discovered the night before the accident, and a tag "To be left in" was placed

upon it. The car starter saw the tag; but because there were no other cars to accommodate the Sunday travel, he started the defective one for a trip upon the "Lake circuit," intending that it should go from the car barn to Manchester street (a short distance) with the end having the defective staff forward. From the latter point the other end of the car would be forward throughout the entire route, and it would be unnecessary to use the defective appliance, and consequently the car would be safe and suitable for the trip. If the car had proceeded directly from the car barn to Manchester street, there would have been no possibility of an accident of the kind which occurred, as there were no other cars upon that portion of track at the time; but in consequence of a misunderstanding of orders by the men in charge of the car, it was placed on a wrong track at first, and the time consumed in correcting the mistake brought it in the rear of the plaintiff's car, which was upon its regular trip. The car starter, seeing that the car was upon the wrong track, directed that it should be transferred to the track intended, or assisted in making the transfer.

*Burnham, Brown, Jones & Warren*, for the plaintiff.

*Oliver E. Branch*, for the defendants.

CHASE, J. The defendants' failure to provide a sufficient number of open cars for the accommodation of their business would not entitle the plaintiff to a judgment in his favor, even if it were found that the deficiency was the proximate cause of his injury; for, well knowing of such failure, he voluntarily continued in the service and thereby assumed the risk of injury from that cause. *Collins* v. *Car Co.*, 68 N. H. 196; *Burnham* v. *Railroad*, 68 N. H. 567; *Young* v. *Railroad*, 69 N. H. 356; *Murphy* v. *Railway*, *ante*, *p.* 18.

The only other negligence alleged is that of the car starter in sending the defective car over the road behind the car on which the plaintiff was employed. To render the defendants liable to the plaintiff for this negligence, it must appear that the car starter was acting in the performance of a non-delegable duty owed by the defendants to the plaintiff, or, in other words, that his act was essentially a master's act as distinguished from a servant's act.

One of the defendants' non-delegable duties was to exercise ordinary care in maintaining their cars in suitable repair for the uses to be made of them. They attempted to perform this duty through the agency of the master mechanic and employees acting under his direction. The car starter was not entrusted with the

exercise of any portion of their discretion relating to the provision of cars, or the maintenance of them in suitable repair, or the determination of the question whether cars were suitable for use. He had nothing whatever to do with these matters. His duty was to superintend the use of cars that the defendants furnished for use. The performance of it began where the performance of the non-delegable duty of the defendants ended. There was no evidence tending to show the existence of a custom of sending cars over the road that were tagged for repairs. So far as appears, this was the only instance of the kind within the history of the defendants' business. There is, therefore, no ground for claiming that the car starter had authority for his act by implication. Furthermore, all the evidence tends to prove that there was no negligence on the part of the defendants in the performance of the duty under consideration. The defect in the brake staff was seasonably discovered by their agents or servants, the car was withdrawn from service for the time being for the purpose of making the needed repairs, and sufficient notice of the fact was given. The case in this respect differs so materially from *Rodney* v. *Railway*, 127 Mo. 676, cited by the plaintiff, that if the law of Missouri relating to master and servant were like that of this state the case would be an authority inferentially in favor of the defendants, rather than the plaintiff. It is not and cannot with reason be asserted that there was any want of ordinary care in these acts; nor can it be reasonably asserted that there was unreasonable delay in making the repairs. If the defect had not been discovered, or, being discovered, the car had not been withdrawn from service, the question would present a very different aspect.

But the plaintiff says these acts were not a full performance of the defendants' duty; that the duty included an obligation that they personally should see to it that the defective car did not go into the hands of their employees for use. This position is not tenable. As before suggested, the masterful duty consists in the exercise of care in providing suitable instrumentalities and maintaining them in a suitable state of repair. The servant's duty relates to the use of the instrumentalities furnished. "The line of demarcation here between the absolute duty of the master and the duty of the servants is the line that separates the work of construction, preparation, and preservation, from the work of operation." *St. Louis etc. Ry.* v. *Needham*, 63 Fed. Rep. 107. The car starter's act of sending a car out cannot reasonably be classed as work of construction, preparation, or repair. It requires no exercise of the master's discretion in respect to these matters. Where several cars are furnished for use, the designating of one for a particular trip,—when, as in this case, the act does not

include a determination respecting its suitableness for use,—is simply one step in the use of the car for that trip. It is in no sense a preparation of the car for use. The act does not differ in inherent character from the acts of the motorman in putting on and shutting off the power, or in setting and releasing brakes. It is a detail in the use of the instrumentality, not in the provision of instrumentalities or in their maintenance in a suitable condition for use. Labatt M. & S., ss. 603, 621. The fact that the act in this instance was unauthorized does not change its inherent character. Rather, it tends to disclose its character. Authority to put such a car to use would include authority to exercise the defendants' discretion in deciding upon its suitableness for use under the circumstances. On the other hand, absence of authority to use shows want of authority to represent the master in the only particular which distinguishes the act as masterful. If the defect in the car had not been discovered, or it had not been withdrawn from service, or the car starter had had authority to use it, the negligence of the act in sending the car out would be chargeable to the defendants, not merely because of the designation of the car for use, but because of the failure to use reasonable care in keeping the car in suitable repair. The car, at the time it was sent out, was not an instrumentality furnished by the defendants for use in their business; and, for the time being, they owed the plaintiff no duty with respect to its condition. The car starter's act was not that of a servant acting within the scope of his authority, but the act of a mere volunteer having no authority whatever. See *McGill* v. *Granite Co.*, 70 N. H. 125, 128; *Turley* v. *Railroad*, 70 N. H. 348; *Andrews* v. *Green*, 62 N. H. 436; *Durgin* v. *Munson*, 9 Allen 396. It closely resembles the acts of servants who put tools furnished them by the master to uses for which they were not intended. *Young* v. *Railroad*, 69 N. H. 356; *Morrison* v. *Fibre Co.*, 70 N. H. 406. The defendants are no more responsible for it than they would be for a like act by one of their conductors or motormen, or by a mere stranger.

The insufficiency in the supply of cars did not change the character of the car starter's act from that of a servant to that of the master. As before remarked, he had no authority to supply the deficiency. After the defendants withdrew the car from service, the extent of their business was limited by the facilities they had left for doing business. The situation was as if the defective car had no existence. They were under no obligation to the plaintiff or the public to continue the car in use. They were not bound to carry all passengers the instant they presented themselves. If they furnished reasonable facilities and received passengers without discrimination so long as they had room to accommodate pas-

sengers, they fulfilled their duty as common carriers. *Bennett* v. *Dutton*, 10 N. H. 481. The car starter certainly had no authority to enlarge their business. Any attempt of his in that direction would be his act and not that of the defendants.

The plaintiff does not allege that his injury was due to a failure of the defendants to make and promulgate reasonable rules for the government of their employees in their business. He could not reasonably take this position, for, as before remarked, the evidence indubitably shows that the defect was seasonably discovered and reasonable precautions were taken to prevent the employees from injury by it.

Nor did the negligence alleged consist of a careless exercise of the defendants' discretion in fixing times for the movement of cars over the road. It was not the sending of a car over the road in the rear of the car on which the plaintiff was employed that caused his injury, but the use of a defective car. The recent case of *Wallace* v. *Railroad*, 72 N. H. 504, furnishes no support for a judgment in the plaintiff's favor.

The facts reported do not tend to prove want of care on the part of the defendants in the performance of any non-delegable duty which they owed to the plaintiff, but only want of care on the part of a fellow-servant. The plaintiff assumed the risk of injury from such negligence when he entered the defendants' employ, and he has no ground of action against them therefor.

*Exception sustained: verdict set aside: judgment for the defendants.*

All concurred.