WILLIAM R. RIGGIE *v.* GRAND TRUNK RAILWAY COMPANY.

February Term, 1919.

Present: WATSON, C. J., POWERS, TAYLOR, and MILES, JJ., and
FISH, SUPR., J.

Opinion filed May 8, 1919.

*Evidence—Real  Evidence—Trial—Submission  to  Jury—Presumption on Presumption—Disposition of Case on Reversal.*

Real evidence, sometimes referred to as physical facts, means a fact
the existence of which is perceptible to the senses, and it speaks
for itself conclusively where the evidence thus produced is a
mere matter of observation requiring no explanation or scientific
knowledge to understand it.

Since an inspection of the jack in question shows conclusively that it
could not have been operated as plaintiff and one of his witnesses
testified, the question should not have been submitted to the jury.

Evidence that at times in the past the jack had been thrown into the
gravel, and that sometimes gravel got in between the cogs, had no
tendency to prove that the jack was not safe because of sand or
gravel between the cogs that prevented putting the dog into or
between the cogs, since that would be basing one presumption
upon another.

Although the defendant made no motion for a directed verdict in its
favor, but excepted to the charge of the court for submitting the
case to the jury, on the ground that there was no evidence of
negligence on its part, this Court will render such judgment as
the trial court should have rendered; it being clearly apparent
that there could be no different result on a new trial.

TORT FOR NEGLIGENCE under the Employers' Liability Act.
Pleas, the general issue, and assumption of risk.  Trial by jury
at the April Term, 1918, Essex County, *Slack,* J., presiding.
Verdict and judgment for the plaintiff.  The defendant excepted.
The opinion states the case.

*John W. Redmond* for the defendant.

*Amey & Cameron* and *Porter, Witters & Harvey* for the
plaintiff.

MILES, J.  The main question to be considered here is whether the defendant furnished the plaintiff, its servant, with a reasonably safe instrumentality, called a jack, with which to perform his duties.  The jack was used by the plaintiff in lining up the defendant's railroad tracks, and consisted of an upright rack or standard with cogs or teeth on one side and a projection at right angles to the standard on the other side.  To this standard, on the side having the teeth or cogs, an arrangement was attached, to which one end of a socket, several inches in length, was fastened in a manner allowing the other end to be moved up and down in line with the standard.  To this socket was attached a dog so arranged that it could be inserted between the cogs or teeth of the standard, and when so inserted, by moving the end of the socket, furthest from the standard, downward, the standard was raised with whatever object was on the projection of the standard at its base.  Whenever it was desired to raise and move an object at the same time, the jack was inclined in the direction in which the object was to be moved. A lever several feet in length was inserted in the socket.  In operating the jack the lever was raised, the dog inserted between the teeth or cogs of the standard, and the operator then threw the weight of his body upon the lever, thereby pressing it down, and, if the dog was properly inserted between the cogs or teeth of the standard, it would be raised with the object upon it.  To successfully and safely operate the jack it was necessary for the operator to make this connection between the dog and the standard, and to see that such connection was made before pressing the lever downward.

The negligence alleged by the plaintiff in his complaint is that the jack was "an improper, inefficient, and unsuitable instrument with which to perform the said work" required of the plaintiff.  His claim on the trial was that the jack was improper, inefficient, and unsuitable, not because of its construction, but because its dog and the cogs on the standard were so worn that it was not safe to be used, and in consequence thereof the dog slipped, precipitating him upon one of the rails, inflicting the injury which he received.

There was no evidence in the case tending to show that the jack was an improper, inefficient, and unsuitable instrument with which to perform the services required of the plaintiff, unless the testimony of the plaintiff and one of his witnesses that the

dog and the cogs on the standard were so worn as to be unsafe was evidence tending to prove one or more of those facts. The plaintiff claimed on the trial below that it had such tendency, while the defendant claimed otherwise; but the same was received without objection or exception. Whether it had such tendency is not necessary to determine, in view of the treatment of questions hereinafter made, and we take no further time in considering that matter.

The plaintiff was a section man working on the line of defendant's railroad, and at the time of the accident was engaged with two other section men in lining the track in Island Pond railroad yard. In the performance of that duty the plaintiff was using the jack in question, which was produced on the trial of the case as a piece of evidence tending to show that it was not "an improper, inefficient, and unsuitable instrument," with which the plaintiff was required to perform his duties. The evidence was undisputed that the jack was a standard jack in common use by railroads generally, and the question raised here, under the plaintiff's claim, is whether it was out of repair in the respect claimed by the plaintiff, and whether there was any evidence tending to show that fact.

The evidence of the plaintiff fairly tended to show that at the time of the accident he was engaged in moving a rail on the line of defendant's road. He had placed the projection attached to the standard under the rail to be moved, and had inclined the jack in the direction in which it was to be moved at an angle of about forty-five degrees, when, throwing the weight of his body upon the lever, it gave way resulting in the accident and injury of which the plaintiff complains. With the jack inclined as it was, the iron dog would have a tendency to fall of its own weight between the cogs or teeth of the standard. If the dog had been placed carefully, as the plaintiff was instructed to do by his foreman, only a few minutes before the accident, the possibility of the dog's slipping, even if the dog and cogs were worn to the extent claimed by the plaintiff, is highly improbable; but in the condition in which we find the jack to be upon inspection, it was impossible for the dog to slip if so placed. The jack was a piece of real evidence, and of all proof was the most satisfactory and convincing. Of such evidence it can be said: "*Cum adsunt testimonia rerum, quid opus est verbis.*" Best on Ev. Vol. 1, * 277; 10 R. C. L. 991, par. 176; Jones Com. on Ev. by Horwitz,

Vol. 3, par. 393.   Such evidence is addressed to the senses of the tribunal for inspection (Jones Com. on Ev. by Horwitz, Vol. 1, par. 8a), and is sometimes referred to as physical facts, though the more generally accepted classification is that of real evidence; but, however classified, it means a fact the existence of which is perceptible to the senses.   Bouvier's Law Dictionary, Vol. 3, 2586; *Knock* v. *Tonopah,* 38 Nev. 143, 145 Pac. Rep. 939, L. R. A. 1915 F, 3.   The highest proof of which any fact is susceptible is that which presents itself to the senses of the court or jury.   10 R. C. L. 991, and see 17 Cyc. 290.   So sensible is the law of the transcendent value of this class of evidence that in some cases the production of certain species of real evidence is peremptorily exacted to the exclusion of all substitutes.   Thus a coroner's inquest to ascertain the cause of the death of a person who has died suddenly must be held upon view of the body; Best on Ev. Vol. 1, * 274; Rapalje & Lawrence's Law Dic., Vol. 2, 1067; 1 Bl. Com. * 348; 4 Bl. Com. * 274.   Such evidence speaks for itself conclusively where the evidence thus produced is a mere matter of observation, requiring no explanation or scientific knowledge to understand it.   No amount of personal testimony that a person was alive could overcome the real testimony of the dead body produced before the trier.   When, as here, an object shows conclusively that it could not have operated as a witness testifies, the question should not be submitted to the jury, for the simple reason that in such circumstances the minds of reasonable men could not draw conflicting inferences.   Such holding is not in conflict with *State* v. *Manning,* 75 Vt. 185, 54 Atl. 181.   In that case there was no such evidence as real evidence, and the court in its charge was not referring to that class, and the papers in that case show that the reference by the court to real evidence was called forth by remarks of counsel for the State, respecting certain evidence, that such evidence was real evidence, and was also called forth upon the request of respondent's counsel for instruction to the jury, with which the court complied, and told the jury, as requested, that there was no such classification as real and unreal evidence, referring to the evidence in that case, and using the language of counsel who had characterized some of the evidence in the case as such.   The Supreme Court properly held that the instruction was without error.

The plaintiff produced only one witness, besides himself, who testified that the jack was out of repair in the respect

claimed. That witness testified that, if the dog was placed in
the cogs, it would not slip, and that that was true of any of that
kind even when new.. From that testimony he contends that the
court was justified in submitting the case to the jury. It is true,
as claimed by the plaintiff, that in considering exceptions of this
kind the evidence must be viewed in the light most favorable to
the plaintiff, as on a motion for a verdict; but in neither case
does it follow that the Court is bound to give credit to the testi-
mony of a witness, when the undisputed facts contradicting that
testimony are before it.

Whether the jack was out of repair to the extent claimed
by the witness was a matter plainly to be seen by anyone who
inspected it. The testimony of the witness could add nothing
beyond what the court and jury could see. The evidence was
undisputed that the jack was in the same condition at the trial
as at the time of the accident, and no claim is made but that it
is in the same condition now as on the trial below. Upon ex-
amination we are satisfied that the jack is not out of repair to the
extent claimed by the plaintiff. The dog and cogs do not show
sufficient wear to impair the efficiency of the jack, and, when on
examination, the dog was inserted between the cogs or teeth of
the standard, it was perfectly obvious that it was impossible to
make the dog slip by properly throwing the weight of a man's
body upon the lever. The evidence in this regard, considered
in the light most favorable to the plaintiff, had no tendency to
show negligence on the part of the defendant, but rather on the
part of the plaintiff, notwithstanding that the plaintiff and one
of his witnesses testified that the jack was unsafe in the respect
claimed by the plaintiff; for that testimony was unavailing and
without probative force to establish the fact to which it related,
being opposed and contradicted by the fact itself. *Harrington*
v. *Rutland R. R. Co.*, 89 Vt. 112, 94 Atl. 431; *Carter* v. *C. V. Ry.
Co.*, 72 Vt. 190, 47 Atl. 797; *Labelle* v. *C. V. Ry. Co.*, 87 Vt. 87,
88 Atl. 517. The court erred in submitting the case to the jury.

The plaintiff also claims that the jack was not reasonably
safe, because there was sand or gravel between the cogs or teeth
that prevented putting the dog into or between the cogs or teeth,
and that that was the cause of the dog's slipping. But there was
no evidence in the case supporting such claim. There was evi-
dence tending to show that the jack had at times in the past been
thrown into the gravel occasionally, but no definite time was

stated when this was done. There was also evidence tending to show that gravel sometimes got in between the cogs or teeth; but there was no evidence that this was the condition at the time of the accident. The very extreme to which the evidence went was nothing more than to show an opportunity for gravel to get between the cogs or teeth of the upright standard. This was not enough to establish the alleged defect in the jack. It was a presumption upon a presumption, and therefore lacked the quality of evidence. The rule is well settled that one presumption cannot be based upon another. *Pronto* v. *Sinnott,* 89 Vt. 479, 95 Atl. 647, and cases cited.

The defendant made no motion for a directed verdict in its favor, but excepted to the charge of the court for submitting the case to the jury on the ground that there was no evidence in the case tending to show negligence on the part of the defendant proximately contributing to the injury of the plaintiff. Under the practice of this Court, as it existed at the time *French* v. *Grand Trunk R. R. Co.,* 76 Vt. 441, 58 Atl. 722, was decided, an exception of this kind was not always treated exactly like an exception to the overruling of a motion for a verdict. In the latter case, if the exception was sustained, this Court rendered such judgment as the trial court should have rendered, unless a jury trial becomes necessary, or the decision of this Court places the case in such a state that either party has a right to a trial by jury. *Bass* v. *Rublee,* 76 Vt. 395, 57 Atl. 965; *Woodsville Guaranty Savings Bank* v. *Rogers et al.,* 82 Vt. 468, 74 Atl. 85. See, also, *Wentworth* v. *Waterbury,* 90 Vt. 60, 96 Atl. 334; *Harrington* v. *Rutland R. R. Co., supra.* In the former case when the exception was sustained the judgment was usually reversed and the cause remanded, as in the French case; but under our present practice, when it is clearly apparent that the result on a second trial must be the same as on the first, following the holding in *Rice & Co.* v. *Kennedy,* 76 Vt. 380, 57 Atl. 971, we render such judgment as the trial court should have rendered, thereby saving to the parties the needless trouble and expense of a second trial. See *Barrows* v. *Dugan's Est.,* 88 Vt. 441, 444, 92 Atl. 927.

*Judgment reversed, and judgment for defendant to recover its costs.*