## Charles E. Cota v. Orel Rocheleau and Corinne Rocheleau

[141 A2d 426]

March Term, 1958.

Opinion Filed May 6, 1958.

*Omer L. Moreau* (*Hunt & Eastman* on the brief) for the defendant.

*Leary & Leddy* for the plaintiff.

**Holden, J.** The plaintiff suffered personal injuries in a fall from a staging erected by the defendant Orel Rocheleau in the home which he and the defendant Corinne Rocheleau own together in South Burlington. The authority of Orel Rocheleau to act for his codefendant is not questioned, and since he is directly involved in the matters before us he is referred to as the defendant.

The defendant was formerly a building contractor. He had been engaged in this work for about twenty five years; first as a construction foreman and later in his own construction business. In connection with this work he acquired considerable experience in the erection of stagings.

The plaintiff is an experienced painter and at the time of the accident was in the employ of the defendants. On December 20, 1955, while the plaintiff was at other property of the defendants, the defendant assigned the plaintiff to work on December 21 at the defendants' home, where redecorating work was underway. The defendants desired to complete the work before Christmas. In the conversation between the parties on December 20, the defendant told the plaintiff he would go home and start the staging that night and have the staging ready the next morning. The defendant commenced construction that afternoon.

The redecorating required the removal of defective plaster and the patching of the north wall of the well of a stairway. The staging was erected within this well. The stairway rises from the first floor in an easterly direction along the north wall to a landing. It then ascends along the east wall to a higher landing where the east and south walls abut. From this landing, the original course of the stairway is reversed, as the stairs rise to the second floor along the south wall that encloses the stairway.

The defendant constructed the staging to afford access to the upper area of the north wall, above the level of the second floor. The working platform, which we refer to as the ledger board, extended along the north wall. The right, or easterly support for the ledger board was constructed from two upright metal jacks, placed on the two stair landings along the east wall.

The center shafts of the jacks are adjustable. The difference in the two landing levels was compensated for by variation in the elevation of the center shafts of the jacks. The shaft of each jack is mounted on a tripod. At the base of each leg of the tripod is a metal plate, with a hole centered in the plate, to permit the base to be nailed to the floor.

At the head of each shaft, a metal bracket was affixed. The brackets are of like design, and are constructed to receive planking in two different positions. The flat surface of the plank may be laid horizontally on the bracket with the outer edge of the plank retained by a metal flange. A plank laid in this position may be secured by driving a nail through a nail-hole, centered in the flange. Planking may also be laid vertically in the bracket, with the narrow edge resting at the base of a U-shaped metal slot, two inches in depth. A solid metal flange forms one side of the U-slot, retaining one side of the flat surface of the plank. The center shaft of the jack forms the opposite side of the U, and retains the other flat surface of the plank. A plank laid in this position can be clinched in the bracket by the application of an expanding metal locking device contained in the shaft of the jack. The lock expands from the shaft to bite into the flat surface of the plank nearest the shaft. The construction of the bracket that holds the plank vertically does not permit the plank to be secured to the bracket by nailing.

The plaintiff had previously worked on a scaffold constructed from these or similar jacks, with the planking laid flat or horizontally on the brackets. He had never before worked on a staging constructed from the jacks with the planking laid vertically, on the narrow edge.

On this occasion, the defendant bridged the span between the two jacks on the opposite landings by resting a plank, eight feet in length, on its two inch edge, with the flat surface of the

plank, 10 inches wide, vertically imposed alongside the shafts of the jacks. He testified he applied the locking device on the jacks. However, the evidence construed in the plaintiff's favor, permits the opposing inference that the rear, or south jack was not effectively locked.

The tripods of the jacks were secured to their respective landings by nailing the plates to the floor or wedging the plate under the base board.

The span between the two jacks produced an overhand of eighteen or twenty inches beyond the shaft of the north jack. It cleared the north wall by six or seven inches. The defendant placed the right side of the ledger board on which the plaintiff was to stand on the overhang that extended between the jack and the north wall. The left, or westerly, support of the ledger board was obtained by resting the opposite end of the working platform on a hand railing on the second floor. A four foot stepladder was placed on the second floor near the junction of hand railing and the ledger board. A single plank was adequate for the patching work required of the plaintiff.

When the plaintiff arrived on the job the following morning he had some conversation with the defendant. It was discovered that the left support of the ledger board formed by the hand railing was about a foot too low to permit the plaintiff to reach the area on the north wall that required repair. The defendant instructed the plaintiff to raise the left side of the ledger board to rest on the stepladder. This the plaintiff did, and at the same time he moved the ledger board six inches further away from the north wall to gain more working space.

In changing the left lateral support of the ledger board, the plaintiff ascended the stairway and moved past the landings where the metal jacks were footed. He saw the tripods were nailed to the floor. The plaintiff tested the ledger board by trying his weight on the plank. The plank did not move. The plaintiff's evidence supported a finding that the defendant told the plaintiff that everything was all nailed and assured him he had nothing to worry about.

After some preliminary errands to obtain patching materials, the plaintiff mounted the staging and removed some plaster from the north wall. He had pursued this work for about

twenty minutes. While standing at about the center of the ledger board he reached up to remove a large chunk of defective plaster. The ledger board moved forward toward the wall as the vertical plank which formed its lateral support tilted downward on the forward jack. The vertical plank sprung free from the rear retaining bracket and the staging collapsed. The plaintiff sustained injuries in a fall to the stairway below. He seeks recovery in this action of negligence.

At the trial the court denied the defendant's motion for verdict and refused to set aside the plaintiff's verdict returned by the jury. Judgment was entered for the plaintiff. The defendants have appealed from this result on the contention that the plaintiff failed to establish negligence on the part of the defendants; that the plaintiff was guilty of contributory negligence; and the plaintiff assumed the risk.

■ In assigning the plaintiff to do the work required at his home, the defendant made it abundantly clear that he would furnish the materials and construct the staging necessary to do the job at hand. It then became the defendant's duty to furnish a structure that would support his workman, with reasonable safety, and at such places where his appointed work might bring him, within the requirements of his engagement. *Jarvis* v. *Byrnes*, 115 Vt 346, 348, 61 A2d 543; *Travellers Ins. Co.* v. *Evans*, 101 Vt 250, 260, 143 A 290; *Miller* v. *Dunton*, 98 Vt 113, 114, 126 A 492; *Johnson* v. *Doubleday*, 92 Vt 267, 270, 102 A 1038.

At the time the staging collapsed the plaintiff was using the structure for the very purpose for which it was intended,— to remove plaster from the upper reaches of the north wall over the stairway. The plaintiff was standing where he was required to stand to fulfill the terms of his engagement. *Johnson* v. *Doubleday, supra*, at 270. The defendants' reliance upon the *Jarvis* case cited above has no justification in the facts established by the evidence in this cause. There the staging did not fail and the plaintiff made no complaint about the staging except as to its height. The plaintiff fell as he stepped on a bunch of shingles that were on the staging but not as a part thereof. The plaintiff used the bunch of shingles for a purpose

not intended by the defendant. Here the plaintiff used the ledger board as intended by the defendant.

The fact that the plaintiff did not cause the working platform to be lashed or nailed to its two lateral supports does not preclude a finding of negligence by the defendants. There was nothing inherently dangerous in the ledger board which the plaintiff elevated to the stepladder. It was done at the defendant's direction. There was no particular danger about it, apparent to the handler, as in *Painter* v. *Nichols*, 118 Vt 306, 108 A2d 384. The evidence supports the view that the working platform on which the plaintiff stood would not have been displaced had the right lateral support been secure. This is the theory of negligence alleged in the complaint. The evidence fully warranted the inference by the jury that the precipitating cause of the plaintiff's injury was the failure of the defendant to securely anchor the lateral plank in the U-bracket of the rear jack. The facts presented justified the conclusion that this failure was a shortage in the duty of the defendant to his workman and caused his injury.

■ Defendants' position rests on a contradictory inference as to the proximate cause of the collapse. They claim the movement of the ledger board on the stepladder caused the fall. Whether the inference claimed by the defendants was well founded was for the jury. Contradictory inferences are resolved by the jury rather than the appellate court. *Tinney* v. *Crosby*, 112 Vt 95, 101, 22 A2d 145; *Lee* v. *Donnelly*, 95 Vt 121, 128, 113 A 542.

■ To be sure, in offering the staging structure to the plaintiff, the defendants had the right to expect the plaintiff would exercise reasonable care to observe and protect himself from obvious dangers. *Landing* v. *Fairlee*, 112 Vt 127, 130, 22 A2d 179; *Burleson* v. *Morrisville Lumber Co.*, 86 Vt 492, 498, 86 A 745; *Hartigan* v. *Deerfield Lumber Co.*, 85 Vt 133, 138, 81 A 259. The particular danger involved by the pleadings and the evidence resided in the fulcrum made by the bracket of the rear jack and its locking device. These instruments were employed to retain and hold secure the vertical plank which formed the lateral support for the ledger board.

This was not a simple tool or appliance. Nor would any defect in its function or application be open and plainly visible to ordinary inspection. It required special attention to discover the danger. See *Johnson* v. *Doubleday, supra*, 92 Vt 267, 271, 102 A 1038. The defendant testified the lock in the shaft of the jack was engaged by turning one of the legs of the tripod. Of necessity, the locking device would have to be applied before the legs of the tripod were nailed to the floor. When the plaintiff arrived on the job, the legs of the tripod had been previously nailed to the floor by the defendant. The plaintiff made this observation. It does not appear that the plaintiff knew that the plank, laid vertically in the brackets of the jack, could not be nailed to the bracket. This was the first time he had worked on a staging framed in this way. There is no claim by the defendant that he pointed out this hazard to the plaintiff. On the contrary, he assured the plaintiff that everything was nailed, that the plaintiff had no need to worry, and that defendant had been constructing stagings all his life.

The doctrine of *Landing* v. *Fairlee, supra*, presents no obstacle to the plaintiff's recovery. The facts which justified a directed verdict for the defendant master in that case showed that the plaintiff and his fellow workmen "were practically making their own working place as an incident to the excavation of the gravel". The plaintiff there was charged with the comprehension that the danger increased as the gravel bank became further undermined. The obvious danger from the overhang that ultimately collapsed became more imminent as the excavation progressed. The plaintiff workman was held to be precluded from the right to assume he had been provided a safe place, secure from the danger which overtook him.

■ The case before us is differently stated. The plaintiff Cota was employed to repair the plastered wall. By the terms of his engagement, it was not a part of his duty to construct or inspect the staging erected for him. *Johnson* v. *Doubleday, supra*, 92 Vt at 271, 102 A at 1040. See also, *Bilodeau's Extrx.* v. *Moose River Lumber Co.*, 96 Vt 190, 193, 97 A 671. The plaintiff had the right, nothing to the contrary appearing, to

rely on the defendant's adequate performance of these duties which the defendant had undertaken. *Barclay* v. *Wetmore & Morse Granite Co.*, 92 Vt 195, 198, 102 A 493 (reversed on another point); *Lassasso* v. *Jones Bros.*, 88 Vt 526, 534, 93 A 266. More specifically, the plaintiff had the right to assume the ledger board was adequately supported and that it was reasonably safe for him to pass over. *Cross* v. *Passumpsic Fibre Leather Co.*, 90 Vt 397, 409, 98 A 1010. His right to these assumptions is reinforced by the defendant's assurance that all was securely fastened.

■ On the facts presented the issue of contributory negligence and the assumption of risk were properly submitted to the jury for decision. *Johnson* v. *Doubleday, supra*, 92 Vt at 271, 102 A at 1040.

■ The defendants' motion to set aside the verdict is based on the insufficiency of the evidence to support the verdict. The motion raises a question of law of the same nature and substance as their motion for a directed verdict. Our consideration of exceptions to the motion for a directed verdict adequately disposes of this ground of the motion. *Anair* v. *Mutual Life Ins. Co.*, 114 Vt 217, 236, 42 A2d 423, 159 ALR 547; *Belock* v. *State Mutual Fire Ins. Co.*, 106 Vt 435, 439, 175 A 19.

■ Insofar as the motion relates to the preponderance of the evidence, it is directed to the discretion of the trial court. Our review of the record establishes the verdict to be well founded. *Travers & Thomas* v. *Rupe*, 116 Vt 314, 317, 75 A2d 692.

*Judgment affirmed.*