## Dolores McDonnell v. Montgomery Ward & Company, Inc.

[154 A2d 469]

May Term, 1959.

Present: **Hulburd, C. J., Holden, Shangraw and Barney, JJ. and Divoll, Supr. J.**

Opinion Filed September 1, 1959

222

*Lawrence C. Jones,* for the defendant.

*Bloomer & Bloomer* for the plaintiff.

**Holden, J.** The plaintiff was burned by a burst of exploding fuel gas while she was attempting to light the oven of a cooking range. The plaintiff's husband, Kenneth McDonnell, had purchased the appliance, referred to as a Ward's Gas Range, from the defendant a short time before his marriage

to the plaintiff. The stove was delivered to the McDonnell home on August 2, 1956.

The plaintiff's husband engaged the Rutland County Gas Company to install the stove and supply it with fuel. On August 6, 1956, William Fredette, a service representative of the Rutland County Gas Company, installed the stove and connected it with a cylinder of bottled gas that he located outside the McDonnell home, a distance of some forty feet from the range. The fuel provided was a liquid petroleum product, bottled and contained in a cylinder under pressure. The fuel is transformed into a gas when released from its cylinder. The fuel gas is volatile, inflammable, and dangerous, unless properly confined. Fredette was called as a witness for the plaintiff and testified to the installation of the stove and the connection of the appliance to the gas supply. Connection was made by use of copper tubing. After his installation, the system was checked for fuel leaks and none were found.

The witness described the operation of the oven unit. Gas supply is furnished the oven burner through a line that passes through an orifice to provide for the mixing of petroleum with air. Oven heat is provided by igniting this mixture at the base of the oven burner. The flow of gas to the burner and the oven temperature are controlled by a single regulating device which is operated manually by setting a graduated dial. When the dial is set at a given oven temperature it simultaneously opens the gas jet. The burner initially burns at high flame. When the oven temperature reaches the temperature indicated by the dial setting the high flame is automatically reduced to a low flame by operation of a thermostat control that is sealed within the panels of the oven compartment.

On the day of the installation, Fredette ignited the oven burner. He set the heat control dial at a temperature setting and awaited the burner to proceed from high flame to the minimum fire. He made an adjustment of two screws to reduce the intensity of the low flame. The witness testified that he "set the pilot high." He made no attempt to adjust the ealed thermostat. He testified that after the required ad-

justments, all units of the range functioned properly.

The oven burner is equipped with a safety stand-by pilot light that is designed to ignite simultaneously with the oven burner. The pilot is extinguished when the gas supply to the oven is cut off. The purpose of the pilot light is to provide a constant flame while gas is supplied to the oven burner, to re-ignite the oven burner in the event the burner flame, at either high or low fire, should become extinguished. The evidence is undisputed that the sealed thermostat unit has no effect on the operation of the safety pilot. Compare, *Lewis* v. *Vermont Gas Corp.*, 121 Vt 168, 151 A2d 297, 301.

The plaintiff had used the surface burners of the stove prior to the day of the accident, August 19, 1956. On that day she undertook to light the oven burner for the first time, to do some baking. The plaintiff testified in response to a general question that she followed the printed instructions furnished with the range at the first lighting. The burner ignited. Later, she discovered that the oven burner was out. She turned the gas off by the dial control and permitted the oven door to remain open to allow the gas fumes to escape.

The plaintiff's direct testimony continues:—"I worked around the kitchen and did a few things. Then I went back fifteen or twenty minutes later and then I turned the number of the dial there and had the match lit again and then I turned the gas on and when I had the match down there where I lit it and I got it even close to where it would light it blew right off." The plaintiff was burned by the flames produced in this flash explosion.

The instructions furnished by the defendant with the stove were received without objection as defendant's exhibit A. In the exhibit this instruction appears, "CAUTION: when lighting oven, hold lighted match over oven lighting hole before turning on gas. If gas is turned on first, a gas pocket can form which will cause a flareback."

After the plaintiff's injury her husband, Kenneth Mc-Donnell complained to the defendant of the incident. In response to this communication, the defendant's service department manager in Rutland, Warren Hilliard, visited the McDonnell home, and later inspected the gas range. Mr.

McDonnell was permitted to testify that Hilliard told him that he found a defective thermostat in the course of the inspection of the stove at the McDonnell home. This evidence was directly denied by Hilliard but for the purpose of this appeal we are bound to treat it in the light most favorable to the plaintiff. *O'Brien* v. *Dewey*, 120 Vt 340, 346, 143 A2d 130.

At Mr. McDonnell's request, the defendant removed the gas range from the plaintiff's home and replaced it by installing an electric range. The plaintiff's husband was allowed full credit of the purchase price of the gas stove in the exchange.

On these facts, and over the defendant's exception to the court's refusal to direct a verdict for the defendant, the cause was submitted to the jury on the application of the doctrine of *res ipsa loquitur*. From a verdict and judgment in favor of the plaintiff the defendant brings this appeal.

The defendant contends there was error in the reception of the evidence given by Mr. McDonnell that the defendant's service representative Hilliard stated he found the thermostat to be defective. This evidence was first admitted over the objection of counsel for the defendant that the declarant had not been adequately identified. Later the defendant moved to strike the testimony on the ground that the service representative Hilliard had no authority to make any admission or declaration that would be binding on the defendant. The trial court denied the motion to strike and permitted the evidence to stand.

■ The record discloses that it was Hilliard's duty, in his employment by the defendant, to entertain and investigate complaints concerning equipment and appliances merchandised by the defendant in the Rutland area. It was a part of his work to inspect this appliance and ascertain what, if anything, was wrong with the range. It appears that he visited the plaintiff's home for this purpose. Upon this factual foundation, there was adequate justification for the preliminary rulings of the court to the effect that the evidence was proper for the jury to consider. The statement, if made, was within the apparent range of the authority entrusted to the service

representative by the defendant. The force and ultimate effect of the declaration was for the jury to determine. *Fournier* v. *Burby,* 121 Vt 88, 148 A2d 362, 364; *Gilfillan* v. *Gilfillan's Estate,* 90 Vt 94, 100, 96 A 704.

The declaration of the defendant's representative that the thermostat in the gas range was defective affords the only testimonial evidence that bears on the defendant's neglect. No other evidence of want of care by the defendant has been indicated in the briefs and we have found none. The defendant resisted the application of *res ipsa loquitur* and moved for a directed verdict of no liability on the ground that no actionable negligence had been demonstrated. Whether the doctrine was properly invoked presents the main and controlling question of this review.

■ The fundamental rule that he who complains of negligence must prove it, is sometimes satisfied by mere proof of the fortuitous event which inflicted injury on the claimant. The law recognizes that in certain situations and circumstances, an inference of culpable negligence is justified without further search or proof of the precise act of omission or commission involved. The event itself is said to speak of negligence. This method of proof rests on common experience rather than testimonial evidence. When the doctrine is properly invoked, it amounts to a preliminary ruling by the court that the physical causes of the kind which produced the particular injury under investigation do not ordinarily exist in the absence of negligence. " 'Res ipsa loquitur' is the phrase appealed to as symbolizing the argument for such a presumption." 9 Wigmore, Evidence, 3rd Ed. §2509, p. 377; 2 Harper & James, The Law of Torts, §19.5, p. 1075; Pollock, The Law of Torts, 13th Ed., p. 463.

■ The doctrine and its application have been recognized in early cases in this Court. But the area in which this method of proof satisfies the test of actionable negligence has been restricted by definite limitations. It is the requirement of our decisions that the evidence must manifest: 1. A legal duty owing from the defendant to the plaintiff to exercise a certain degree of care in connection with a particular instru-

mentality to prevent the very occurrence that has happened. 2. The subject instrumentality at the time of the occurrence must have been under the defendant's control and management in such a way that there can be no serious question concerning the defendant's responsibility for the misadventure of the instrument. 3. The instrument for which the defendant was responsible must be the producing cause of the plaintiff's injury. 4. The event which brought on the plaintiff's harm is such that would not ordinarily occur except for the want of requisite care on the part of the defendant as the person responsible for the injuring agency. *Joly* v. *Coca Cola Bottling Co.*, 115 Vt 174, 177, 55 A2d 181; *Houston* v. *Brush & Curtis*, 66 Vt 331, 346, 29 A 380. When these factors are combined in the evidence, an inference of negligence is justified. And thus, in this cause, if the evidence warrants the application of the doctrine of *res ipsa loquitur*, the case was properly submitted to the jury. See *Humphrey* v. *Twin State Gas & Electric Co.*, 100 Vt 414, 424, 139 A 440, 56 ALR 1011; *Sweeney* v. *Erving*, 228 US 233, 240, 33 S Ct 416, 57 L Ed 815, 817.

■ The defendant, as the supplier of a gas range designed to burn a combustible fuel, owed a duty of care in the production and inspection of the appliance to avoid unreasonable risk of harm to those who might use its product. *Carter* v. *Yardley & Co.*, 319 Mass 92, 64 NE2d 693, 696, 164 ALR 559; 2 Restatement, Torts, §395, p. 1073. This duty is the source of the manufacturer's liability in *Joly* v. *Coca Cola Bottling Co.*, *supra*, 115 Vt 174, 55 A2d 181.

Clearly, the gas range, considered as a complete appliance, could not be brought within the defendant's control and management at the time of the injury for it was installed and operated by persons beyond the defendant's reach. But the evidence supports the view that the sealed thermostat, furnished and installed by the manufacturer, remained untouched after the delivery of the applicance to the plaintiff's home. Thus, the plaintiff's theory of liability segregates this particular instrument from the other mechanism of the range and seeks to invoke the precept of the Joly case.

The theory breaks down on the vital element of causal

connection between the defective thermostat and the exploding gas that inflicted the bodily injury. The plaintiff advocates "the only cause of the explosion must have been and was the defective thermostat which leaked gas."

The record fails to indicate how the thermostat was defective. There is no evidence that the instrument leaked gas. And there is no proof that the thermostat contributed, in any degree, to the dangerous accumulation of fuel gas that finally burst into flame.

■ The agency over which the manufacturer retains exclusive control must be established as the proximate cause of the injury. *Joly* v. *Coca Cola Bottling Co., supra,* 115 Vt at 178, 55 A2d at 184. The forces or deficiences which released the explosive substance must be conditions directly attributable to the responsibility of the person sought to be charged. Thus it was in the Joly case, for the exploding bottle could be directly laid to either of two factors—a defective container or excessive pressure in filling the bottle. The quality of the container and the amount of internal pressure exerted upon it were both conditions for which the defendant was responsible.

This case stands differently. The release of the fuel gas, that combined with the lighted flame in the hand of the plaintiff, was not related in the evidence to the sealed thermostat. It does not appear that the instrument itself exploded and it was not shown that the installation or operation of this device had anything to do with the dangerous collection of gas that did explode.

■■ The rule of *res ipsa loquitur* has no application in explosion cases unless the substance that explodes or the instrument which produces the detonation were under the exclusive control of the defendant. *Woschenko* v. *Schmidt & Sons,* 2 NJ 269, 66 A2d 159, 12 ALR2d 281, 285; *Actiesselskabet Ingrid* v. *Central Railroad Co. of N. J.,* 216 F 72, 79, LRA 1916 B, 716, 722, cert. denied 238 US 615, 35 S Ct 284, 59 L Ed 1490; see also *Conley* v. *United Drug Co.,* 218 Mass 238, 105 NE 975, 976, LRA 1915 D, 830; 22 Am Jur, Explosions and Explosives, §95, p. 213; 35 CJS, Explosives, §11, pp. 254-255. The requirement of exclusive control is related to proximate cause.

It calls for proof tending to eliminate other possible causes of the occurrence, so as to indicate that the negligence of which the event speaks is probably that of the defendant. 2 Harper & James, The Law of Torts, §20.2, p. 1111.

In the case now before us, the evidence is clear and uncontradicted that the flow of fuel gas to the point where the explosion occurred was controlled, in part at least, by the manual operation of the dial regulator which was set by the plaintiff. And it appears from the plaintiff's testimony that, as the second lighting, she failed to bring the lighted match directly over the lighting port before turning on the gas supply, contrary to the precautionary instructions furnished with the appliance.

But even if the jury might say that the plaintiff's conduct was not the procuring cause of her injury, the triers of the fact were afforded no alternative cause for which the defendant was responsible. Here there is no conflict of equal probabilities as to why or how the injuring agency did its mischief. Compare *Fallo* v. *New York, New Haven & Hartford Railroad Company*, 123 Conn 81, 192 A 712; *Jesionowski* v. *Boston and Maine Railroad*, 329 US 452, 67 S Ct 401, 91 L Ed 416. The critical shortage in the plaintiff's case lies in its failure to establish that the single instrument in the appliance which remained in the defendant's constructive control was, in fact, the injuring agency.

■ Without evidence, direct or circumstantial, that the defective thermostat was a procuring factor in the release of the explosive gas, the requisite causal connection between neglect and injury is wanting. Liability for negligence is not established until the fact of injury is traced and connected to an act or agency that is the defendant's responsibility. *Joly* v. *Coca Cola Bottling Co.*, *supra*, 115 Vt at 178, 55 A2d at 184; *Cameron* v. *Bissonette*, 103 Vt 93, 96, 152 A 87; *Humphrey* v. *Twin State Gas & Electric Co.*, *supra*, 100 Vt at 422, 139 A at 444.

The shortage in the evidence as to causation is not supplied by the fact that the defendant permitted the exchange of the gas range for an electric stove and allowed the plaintiff's hus-

band full credit for the appliance that was returned. The plaintiff argues that this course of conduct constituted an implied admission of liability by the defendant. There is nothing about this transaction inconsistent with the defendant's denial of liability. See 4 Wigmore, Evidence, 3d Ed., §1052, p. 11. It appears that the exchange was requested by Mr. McDonnell. The fact that the defendant complied with the request without surcharging the purchaser for his use of the appliance neither adds to nor detracts from the issue of the cause of the accident.

Although the plaintiff suffered an unfortunate accident, the evidence fails to justify an inference that any act or omission on the part of the defendant was the legal cause of her misfortune. The defendant's motion for a directed verdict should have been granted. This result renders it unnecessary to consider other exceptions of the defendant concerning the trial court's instructions and its refusal to set aside the plaintiff's verdict.

*Judgment reversed and judgment for the defendant to recover its costs.*