**NORTHERN OIL COMPANY, Inc., Plaintiff-Appellee,**

v.

**SOCONY MOBIL OIL COMPANY, Inc., Defendant-Appellant.**

**No. 443, Docket 29509.**

United States Court of Appeals Second Circuit.

Argued April 21, 1965.

Decided June 17, 1965.

A. Pearley Feen, Burlington, Vt., for appellant.

John G. Kissane, St. Albans, Vt. (Lisman & Lisman, Burlington, Vt., on the brief), for appellee.

Before KAUFMAN, HAYS and ANDERSON, Circuit Judges.

HAYS, Circuit Judge.

The Socony Mobil Oil Company, Inc. (Socony Mobil), appeals from a judgment of the District Court for the District of Vermont in the amount of $95,000 based on a jury verdict. We reverse the judgment and remand the action for a new trial on the ground that certain hearsay testimony was improperly admitted.

This is a diversity action brought by the Northern Oil Company, Inc. (Northern) against Socony Mobil. It was tried under Vermont law on a theory of malicious prosecution.

In the former action which is alleged to have been maliciously prosecuted Socony Mobil originally sought and obtained an injunction *pendente lite* in a Vermont court. The facts found by the Vermont court which were necessary to its decree are binding in this action on grounds of collateral estoppel. McKee v. Martin, 119 Vt. 177, 179–180, 122 A.2d 868 (1956). They may be summarized as follows: Socony Mobil planned in the summer of 1960 to discontinue operations at St. Albans Bay and to sell to the highest bidder seven riveted steel storage tanks which were being used there. The Massena Iron & Metal Company (Massena) submitted a written offer to buy the tanks, which was accepted by Socony Mobil. The state court expressly found

that Massena planned to reassemble the tanks "for sale to others," and that Socony Mobil's agent gave Massena the names of prospective buyers. The contract with Massena "did not require that the tanks be reduced to scrap," and the parties agreed on dismantling the tanks only in order that Massena could cut the tanks in to sections convenient for transportation.

Massena sold the tanks to Northern who had had no notice of the provisions of Massena's contract with Socony Mobil. According to uncontradicted testimony at the trial below, Northern planned to remove the tanks to property adjacent to Socony Mobil's "tank farm" so that Northern could operate its own "tank farm" in the St. Albans Bay area where the costs of transportation would be cheaper than at Northern's Burlington location.

Socony Mobil discovered Northern's plan and sought a declaratory judgment and injunctive relief in the Court of Chancery for Chittenden County, Vermont, claiming that Massena and Socony Mobil had contractually agreed that the tanks would be "cut up * * * for use as scrap metal only" and would not be reused for storing oil and gasoline. The chancellor granted the temporary injunction on the terms requested, pending a later hearing. After the subsequent hearing both Socony Mobil as plaintiff and Massena and Northern as defendants submitted requested findings of fact. The findings which the chancellor handed down followed the defendants' requests. The preliminary injunction then in force was dissolved and the permanent injunction sought by Socony Mobil denied. The chancellor issued a decree permitting Northern and Massena to remove the tanks and reuse them "for any lawful purpose including the storage of petroleum products."

In January 1964 Northern, which is a Vermont corporation with its principal office in Vermont, filed a complaint in the federal district court in Vermont against Socony Mobil, which is a New York corporation with its principal office in New York, briefly reciting the proceedings in the Vermont state court, and alleging that a $15,000 injunction bond had been posted by Socony Mobil to indemnify Northern for damages, if it was found that Socony Mobil had no equitable right to the preliminary injunction. Northern also alleged damages in excess of $15,000 for the loss of intended storage space and the increase in transportation costs sustained by Northern.

■ The district court correctly determined that it had subject matter jurisdiction because the complaint pleaded not only an action on the bond but an action for damages. Under Vermont law the party injured by the issuance of a temporary injunction *pendente lite* which has been wrongfully secured may sue both on the injunction bond and for malicious prosecution. Powell v. Woodbury, 85 Vt. 504, 83 A. 541 (1912).

■ The district court was also correct and within its discretion in not declining jurisdiction in this case because of comity, since it appears that the state court of chancery had already lost its jurisdiction. The other points raised by the motion for a directed verdict are without merit.

■ Socony Mobil takes issue with Northern's postjudgment amendment of its complaint to conform to its proof by alleging a cause of action sounding in malicious prosecution. This amendment was correctly permitted under the express terms of Rule 15(b) of the Federal Rules of Civil Procedure authorizing "[s]uch amendment of the pleadings as may be necessary to cause them to conform to the evidence * * * upon motion of any party at any time, even after judgment * * *." Judge Gibson stated during the defendant's case that, as he understood plaintiff's proof, it stated a cause of action for malicious prosecution. Socony Mobil had the opportunity at that time, as is provided also by Rule 15(b), to assert prejudicial surprise and to move for a continuance in order to obtain evidence in rebuttal. See SEC v. Rapp, 304 F.2d 786, 790 (2d Cir. 1962); Matarese v. Moore-McCormack Lines,

Inc., 158 F.2d 631, 633, 170 A.L.R. 440 (2d Cir. 1946); 3 Moore, Federal Practice ¶ 15.13 [2], at 991–994 (2d ed. 1964). Not having asserted prejudice then, Socony Mobil is foreclosed now.

■■■ Socony Mobil also questions Judge Gibson's instructions to the jury. The charge correctly stated the law dealing with the tort of malicious prosecution, which requires that the jury find malice, lack of probable cause and damages, Powell v. Woodbury, 85 Vt. 504, 513, 83 A. 514 (1912), and permits the jury to infer malice from the lack of probable cause, Ryan v. Orient Ins. Co., 96 Vt. 291, 296, 119 A. 423 (1923); Prosser, Torts § 99, at 666 (2d ed. 1955). The petition, findings of fact, decree, and other papers in the state court proceeding, which conclusively established the parties' rights regarding the controversy over the storage tanks, were relevant evidence on the issue of lack of probable cause. That evidence justified Judge Gibson in submitting the issue of probable cause to the jury. See French v. Smith, 4 Vt. 363, 365, 24 Am.Dec. 616 (1827).

The testimony of one Bray, Northern's treasurer, was crucial to the finding of malice and lack of probable cause. According to Bray, he went to the Albany, New York, office of Socony Mobil to see the district sales manager at about the time the temporary injunction was dissolved. However, he did not speak to the manager himself, who had been called out of town, but to his assistant, the man "in charge of the entire area." When Bray was asked on direct examination what this man said concerning the Vermont injunction, the attorney for Socony Mobil objected on the ground that the question called for hearsay statements. When the court asked Northern's counsel for the name of the Socony Mobil employee, Northern's counsel proceeded along a new tack of seeking to show the employee's authority to speak for the corporation. Bray testified that the Albany district office directed operations and sales at Burlington and St. Albans, Vermont, and that the employee he talked

to was the man in charge on that day. Bray stated that this man "had had some knowledge of and had heard of this case," but he was interrupted by Northern's counsel and the court, who instructed Bray to repeat before the jury the hearsay statements. According to Bray, the man said that "Socony never expected to win this case." Socony Mobil's counsel again objected but the court admitted this hearsay testimony on the ground that this was "a talk between the then man in charge of the Albany District and this man [Bray]." Socony Mobil demanded that the man's name or position be given, but the court interjected, "Well, if he [Bray] doesn't know, how are you going to know." The court proceeded to permit the jury to hear from Bray the following testimony:

"He [Socony Mobil's employee] said Socony never expected to win the case, but they didn't want competition with their own dealers with their own tanks in the area, and this was the reason for the suit."

■■■ The Vermont law as to the admissibility of such hearsay evidence is set forth in several recent cases. Where the statement in question is deemed to be within the general scope of the agent's authority, the Supreme Court of Vermont has ruled it admissible. McDonnell v. Montgomery Ward & Co., 121 Vt. 221, 224–226, 154 A.2d 469, 80 A.L.R.2d 590 (1959); Fournier v. Burby, 121 Vt. 88, 90–91, 148 A.2d 362 (1959). The latest Vermont case on point, however, affirmed the exclusion of a hearsay statement of an insurance company representative to the effect that there was "substitute vehicle" coverage under the policy. The court said:

"We find no error in the ruling. The representative was not identified and there was no showing of the authority or capacity in which he served his principal. Without some foundation that the utterance was within the apparent range of the employee's authority, the statement was properly excluded. Jones v. Gay's Express, Inc., 110 Vt. 531,

534, 9 A.2d 121 [1939]. Compare McDonnell v. Montgomery Ward & Co., 121 Vt. 221, 225, 154 A.2d 469, 80 A.L.R.2d 590 [1959]." Harte v. Peerless Ins. Co., 123 Vt. 120, 121–122, 183 A.2d 223, 225 (1962).

In the present case, since the defendant's agent was not specifically identified and it was not shown that the statement concerning the purpose of the Vermont litigation was made within the scope of the authority of an assistant to the district sales manager in the Albany office, the district court erred in admitting the evidence over Socony Mobil's objection on the ground of hearsay.

■ The rules concerning the admission of an agent's hearsay statements in the federal courts are not significantly different from the Vermont rules. See Dilley v. Chesapeake & O. Ry., 327 F.2d 249, 251–253 (6th Cir. 1964); Cromling v. Pittsburgh & L. E. R. R., 327 F.2d 142, 147 (3d Cir. 1964); Compagnie de Navigation, etc. v. Mondial United Corp., 316 F.2d 163, 171 n. 10 (5th Cir. 1963); Flintkote Co. v. Lysfjord, 246 F.2d 368, 383–385 (9th Cir.), cert. denied, 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957); Mississippi Valley Barge Line Co. v. Cooper Term. Co., 217 F.2d 321, 324–325 (7th Cir. 1954). This court has excluded employees' hearsay statements, for example, in an antitrust action against their corporate employer because such testimony was "hearsay, and not binding on their employers." Monticello Tobacco Co. v. American Tobacco Co., 197 F.2d 629, 633, cert. denied, 344 U.S. 875, 73 S.Ct. 168, 97 L.Ed. 678 (1952), citing Goetz v. Bank of Kansas City, 119 U.S. 551, 7 S.Ct. 318, 30 L.Ed. 515 (1887). The rule as applied in the federal courts, as well as the Vermont courts, is stated in Section 286 of the Restatement (Second), Agency (1958):

"Statement to Third Persons Constituting Admissions

"In an action between the principal and a third person, statements of an agent to a third person are admissible in evidence against the principal to prove the truth of facts asserted in them as though made by the principal, if the agent was authorized to make the statement or was authorized to make, on the principal's behalf, any statements concerning the subject matter."

■ In the instant case, Northern produced no evidence that the assistant to the district sales manager, to whom Bray spoke, had any specific authority to make the statement testified to. Thus, the relevant inquiry should have been whether that employee had any general authority to make statements concerning corporate litigation. Bray testified that the employee had some knowledge of the law suit, but Bray was prevented from detailing the character of this knowledge, for example, whether it was itself founded on office rumor and hearsay, or whether the employee was privy to the corporation's motives. The fact that the employee was "in charge" of the Albany office while his superior was out of town is no guarantee in a large corporation that he spoke with the authoritative voice of corporate management. On cross-examination after the evidence had been admitted over objection, Bray frankly admitted that he could not give the employee's name, that he met the employee in one of the offices "two or three doors down the hall * * * on the first floor" of Socony Mobil's administrative building, that he had never met the man before, and that, as far as he knew, the employee "had nothing to do with the transaction" for the sale of the tanks. Even if as claimed the employee had temporary direction over operations and sales in Vermont, it would still have been necessary in this case to establish the nature of his authority to speak concerning corporate litigation. While it is not essential that the employee's name be ascertained before his statement is admitted against his employer, the employer should be given information reasonably definite for identification both in order that his authority may be tested and that his hearsay statement, if introduced, may be rebutted.

The admission of this clearly prejudicial hearsay evidence was error which requires that the judgment be reversed and the case be remanded for a new trial.