### Beatrice E. Norton v. Donald T. Lumbra and Phyllis C. Lumbra

[ 238 A.2d 628 ]

December Term, 1967

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed February 6, 1968

*Francis D. Foley* and *Joseph C. McNeil,* for the plaintiff.

*Wick, Dinse & Allen* for the defendants.

**Holden, C.J.** The plaintiff seeks recovery in this action of negligence for injury sustained in a fall from a stepladder. At the time of her injury she was employed as a part time domestic in the defendants' home. At the close of the plaintiff's evidence the court granted the defendants' motion for a directed verdict and this appeal followed.

The plaintiff was an efficient worker and worked pretty much on her own initiative. The accident occurred on September 6, 1963. The plaintiff was washing windows at the time from outside the kitchen.

She was standing on a folding stepladder. The ladder had two ascending steps and a step at the top or apex. The plaintiff had placed the ladder on a flagstone walk below and adjacent to the kitchen windows. The windows opened outwardly by turning a cranking device located inside the house. The window screens were not moved by this process for they were stationary and located inside the windows. In an open position, both the interior and exterior surfaces of the window were accessible from the outside.

In order to reach the top of the windows, the plaintiff had to stand on the third, or top step of the ladder. The ladder was constructed of metal and had been used in the defendants' household for ten or twelve years. The plaintiff had washed these particular windows on a number of previous occasions. She always used this particular ladder but without difficulty. The defendant owned a five-step aluminum ladder but the plaintiff testified she did not know of this and had never been told to use it.

The plaintiff ascended to the top step and was washing the interior surface of the windows. Just before her fall she had called upon another domestic employee of the defendants, Mrs. Pauline Grant, to open the window further. Mrs. Grant complied and left the kitchen. Shortly afterward, the plaintiff testified: "* * * I felt the ladder sort of cave in, and I grabbed a hold of one of the windows to keep from falling, and in the meantime I put my hand out to prevent myself from hitting my head on the step or the post that goes down from the roof, and down I went." She further explained that she felt the ladder give way underneath her. At the time of this misfortune the plaintiff was a large woman of forty-seven years.

Mrs. Grant heard the noise of the ladder hitting the flagstones. She found the plaintiff lying on the walk against some steps leading to a doorway. The ladder was lying against the plaintiff's legs. This witness described the ladder before the accident as "a little wobbly and one leg was a bit warped." Mrs. Grant also testified about an occasion when she was using the ladder, prior to the accident, and the defendant Mrs. Lumbra cautioned her to be careful because the ladder was a bit shaky.

The stepladder was received in evidence. It was before the court and referred to by counsel in oral argument. It showed considerable use and chipped paint exposed the bare metal in numerous places. The folding brace connected to front and rear uprights on the right side

was slightly bent. There appeared to be a moderate bend in the metal of the right upright at or near the first step. The base of the ladder was designed to afford six points of contact, two on each side in the front and one with a single leg on each side at the rear. Rubber tips for the forward legs had been worn through so that the bare metal rested on the surface upon which it stood. Although not in precise alignment, there was no fragmentation of any of the component parts of the ladder. It was entirely intact. All of the connecting parts were securely fastened.

On this presentation, the defendants moved for a directed verdict, contending that the plaintiff had failed to establish her injuries were caused by any breach of duty on their part. The motion further specified that the question of causation was left entirely to speculation, that the plaintiff assumed the risk and her own negligence contributed to the injury which befell her. The court granted the motion on all grounds. The correctness of that ruling is the question for review.

 It is not open to question that an employer owes a duty to his employee to supply him with tools and appliances that are reasonably safe for the work he assigns him. *Cota* v. *Rocheleau,* 120 Vt. 391, 395, 141 A.2d 426; *Jarvis* v. *Byrnes,* 115 Vt. 346, 348, 61 A.2d 543; *Duggan* v. *Heaphy,* 85 Vt. 515, 520, 83 A. 726. And the fact that the plaintiff had regularly used the ladder in the past with safety, is not conclusive that it was safe for her to use at the time of her misfortune. *Bailey* v. *Central Vermont Railway, Inc.,* 113 Vt. 433, 435, 35 A.2d 365; *Geno* v. *Fall Mountain Paper Co.,* 68 Vt. 568, 576, 35 A. 475. It was for the jury to say whether the ladder, furnished by the defendants, enabled the plaintiff to carry out the duties assigned her with reasonable safety.

 Although this issue was made, it remained for the plaintiff to establish the fact that her injury was produced as a proximate consequence of the defects in the instrument provided for her to use. *McDonnell* v. *Montgomery Ward & Company,* 121 Vt. 221, 229, 154 A.2d 469, 80 A.L.R.2d 590; *Humphrey* v. *Twin State Gas & Electric Co.,* 100 Vt. 414, 422, 139 A. 440, 56 A.L.R. 1011. To this purpose is the plaintiff's evidence that she felt the ladder giving away underneath her and "felt the ladder sort of cave in." But the ladder itself, which the plaintiff produced for inspection refutes the correctness of her impressions and sensations as far as structural breakdown

is concerned. As we have seen, the instrument was totally intact with its supporting members in place and undisrupted. ·

The plaintiff, of course, was entitled to a favorable construction of her evidence in examining the correctness of the court's ruling. But this perspective in the plaintiff's favor will not overthrow undisputed physical facts to the contrary. *Wellman, Admr.* v. *Wales,* 98 Vt. 437, 443, 129 A. 317. Compare *McGrath* v. *Haines,* 125 Vt. 49, 51, 209 A.2d 479. In ruling on the sufficiency of the evidence to support the plaintiff's claim that the ladder collapsed, the court was bound to heed the real evidence which the plaintiff had brought forward for inspection. *Riggie* v. *Grand Trunk Railway Co.,* 93 Vt. 282, 286, 107 A. 126. The state of the ladder and its supporting members after the accident, precluded the jury from finding that the device caved in or disintegrated from structural defects.

The evidence establishes only that the plaintiff and the ladder toppled to the ground together. The defects of which the plaintiff complained, could render the ladder unsteady and insecure in its footing. It also appears that one defendant, Mrs. Lumbra, foresaw danger in this direction, for she warned another employee about this condition.

Yet whether the tottery state of the ladder was the predominating factor in the misadventure is not known. There are other facts present which afford equivalent probability. The uneven surface of the walk, where the ladder was placed to provide elevation for plaintiff, could have introduced similar instability. And the plaintiff could have lost her balance from the precarious station she had selected to reach the top of the window. Her shifting weight and movement, necessary to accomplish the work, might well produce sufficient unbalance by itself to precipitate the fall. The evidence furnished no degree of certainty for a determination by the jury that, but for the warped leg and the curvature of the folding brace, the accident would not have happened as it did.

Beyond that, if the ladder became unstable and insecure under the plaintiff's weight, the plaintiff should have been well acquainted with this danger. While the burden on this issue was with the defendants, the plaintiff's own testimony was that she used the instrument almost exclusively, at times and places of her own selection. If it provided an insecure platform to do the work at hand, her repeated use of the appliance should have made this fact better known

to her than to other members of the household. The force of this evidence is not met by the plaintiff's other testimony that she did not notice the condition of the stepladder. Her opportunity for knowing of the danger is the equivalent to knowledge itself. *Landing* v. *Town of Fairlee*, 112 Vt. 127, 130, 22 A.2d 179; *Thompson* v. *Green Mountain Power Corp.*, 120 Vt. 478, 483, 144 A.2d 786.

The risk which overtook the plaintiff in the setting of the accident was a normal incident of her employment. It was one which she could readily see and understand. Without the aid of statutory regulation to the contrary, the plaintiff's knowledge and participation in the danger preclude recovery from her employers on the facts presented. *Landing* v. *Town of Fairlee, supra,* 112 Vt. at 129, 22 A.2d 179.

*Judgment affirmed.*